MARGARET ALTFILISCH, Appellee, v. HARVEY WESSEL et al., Appellants.

No. 39303.

362

JUNE 24, 1929.

*Chamberlin & Chamberlin* and *Bollinger & Block*, for appellants.

*M. F. Donegan*, for appellee.

STEVENS, J.—I. Garfield Street, in the city of Davenport, lies east and west, and intersects with, but does not extend farther east than, Brady Street, which lies in a somewhat northeasterly and southwesterly direction. On the evening of March 6, 1926, appellee, Margaret Altfilisch, while in the act of crossing Brady Street to the east from the northwest corner of the intersection, was struck by a Ford automobile driven by Harvey Wessel, knocked to the pavement, and permanently injured.

As one of the principal points urged by appellants is that the evidence wholly failed to establish any of the grounds of negligence alleged in the petition, it is necessary that a detailed statement of the record be made. The accident occurred, according to the testimony of appellee, sometime after 6 P. M., and, according to the testimony of the appellant Harvey Wessel and a young lady riding with him, about 7:30. No one testified to the exact time.

Both appellant Harvey Wessel and appellee testified that a

street car going south passed the intersection on Brady Street immediately preceding the accident. The driver of the car testified that he stopped at the curb line on the south side of Garfield Street, to wait for the street car, which did not stop at the intersection, to pass; that he then started the automobile, entered Brady Street, and turned on the east side thereof, to go north; that, just as he straightened the car to proceed, he struck a dark object, which he had not previously seen, and stopped the car. This he testified was accomplished in a distance of five or six feet. Appellee testified that she saw the street car; that she stood a few seconds on the sidewalk at the northwest corner of the intersection; that she looked up and down the street, and saw nothing until the appellant's car was close to her; that she then hurriedly went a couple of steps farther east, when she was struck and knocked down, as stated. She testified that the automobile had not completed the turn when she was struck. The evidence tended to show that she crossed Brady Street at right angles.

There is a dispute in the evidence as to the condition of the weather. All agree that a mist had been falling, and appellee and other witnesses residing near by testified that the mist had changed to snow, and that the street was white. Appellant denied that it was snowing. He also testified that the lights on his car were in good condition and shining brightly. He did not see appellee until the car struck her. There is a street light at the intersection, which, according to the testimony of the witnesses for appellee, was shining at the time of the accident. Appellee testified that appellant told her, immediately after the accident, that he did not see her because his wind shield was covered with rain and snow.

Laura Kuehl, another witness for appellee, testified that she went with the driver of the car and his companion, Helen Cleaver, from the scene of the accident directly to the home of appellee; that, on the way, the driver stated that "it was snowing and raining, and hard to see through the wind shield; that he did not know what he had hit, as his wind shield was full of snow and rain." These statements are denied by appellant and Miss Cleaver.

One of the claims of appellants is that appellee was attempting to cross Brady Street at an angle, in violation of a city ordinance, and that she was guilty of contributory negligence.

The driver of the car and his companion both testified that there was no street light at the intersection, and that it was dark. Appellee was about 67 years of age, was carrying some packages which she had brought from a near-by store, and had a light shawl thrown over her head. She was slightly deaf in her left ear, but otherwise her hearing was not impaired.

Three grounds of negligence were alleged in the petition: (a) That the driver of the automobile failed to pass beyond and around the center of Brady and Garfield Streets before turning north; (b) that he did not sound his horn, or give any warning of the automobile's approach; and (c) that, in entering the intersection and turning to the north, he failed to keep a proper lookout for pedestrians and to lessen the speed of his car and have it under control. The two grounds first stated were withdrawn by the court, and only the third was submitted to the jury.

There would seem from the evidence to have been no good reason why the driver of the car did not see appellee unless the wind shield was in the condition the appellee and Miss Kuehl said appellant told them it was. The intersection was lighted. The jury could have found that the paving was covered, to some extent, by snow, and the lights of the automobile must have illuminated the street beyond the intersection. Of course, in turning, the rays of light might not have fallen directly upon appellee. It seems to us that the jury might properly have inferred from the evidence that the driver of the automobile was negligent in failing to keep a proper lookout for pedestrians and in failing to observe appellee soon enough to have prevented the accident.

According to the testimony of the driver, the speed of the automobile was about six miles per hour. It was his duty to drive the car carefully, and to keep a lookout for pedestrians on the street. As Garfield Street stops at the intersection, there was, of course, less likelihood of pedestrians' crossing the street at that point than in other sections of the city. This did not, however, relieve the driver from the duty to keep a lookout for the safety of pedestrians. We think there was sufficient evidence of negligence to carry the case to the jury. *Holderman v. Witmer*, 166 Iowa 406; *Roberts v. Hennessey*, 191 Iowa 86, 101; *Rolfs v. Mullins*, 179 Iowa 1223.

II. Exceptions were preserved by appellants to Instructions 1, 6, 7, and 10, and to the charge as a whole. The court in Instruction 1 purported to state the facts about which there was no dispute in the evidence. The com-  plaint of this instruction is highly technical and without merit. The facts stated by the court were without dispute in the evidence, and the form of stating the same was sufficiently accurate, and in no sense misleading, as claimed by appellants.

The court, in the fore part of Instruction 6, recited all of the grounds of negligence alleged in the petition, and later in the same instruction, withdrew all of them except the alleged failure of the driver to keep a proper lookout for pedestrians and to lessen the speed of his car and to have it under control. Again, in the succeeding instruction, the court informed the jury that the above ground of negligence alone was submitted for their consideration. In so far as the exceptions preserved relate to Instruction 6 and the portion of Instruction 7 referred to, they are without substantial merit. The language of the instruction was clear and explicit, and could not possibly have in any way deceived or misled the jury.

The vital question in the case, as it seems to us, involves the remainder of Instruction 7. The court in this instruction stated that the statutes of Iowa and the city ordinances of Davenport command the doing of certain acts and the refraining from doing certain other acts by the drivers of motor vehicles or pedestrians upon the streets of Davenport. The instruction then stated that the violation of statutes or ordinances is punished by fine or imprisonment. This was followed by a copy of the statute (Code, 1924), as follows:

"5028. Careful Operation and Speed. Every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed that will not endanger the property of another, or the life or limb of any person."

"5031. Control of Vehicle. The person operating a motor vehicle * * * shall have the same under control and shall reduce the speed to a reasonable and proper rate: * * * 3. When approaching and traversing a crossing or intersections of public

highways, or a bridge, or a sharp turn, or a curve, or a steep descent, in a public highway.''

The recital of the foregoing provisions of the statute is followed by the statement:

''A city street in a public highway. It was the duty of Harvey Wessel, as he approached and turned into Brady Street on the occasion in question, to obey these provisions of the statutes. If he did not do so, he was *prima facie*—that is, upon the face of it—guilty of negligence. It is for you to say, from all of the facts and circumstances in evidence before you in the case, whether or not plaintiff has proven that he did violate either of these provisions of statute, and if you find that he did violate them, whether or not his act in so doing was negligent, and resulted in the collision. The other act of negligence charged against him, failure to keep a proper lookout for pedestrians, is not governed by statute. To fail to do so, however, would be negligent. How carefully he must do so depends upon the conditions existing there at that time. As to it, also, it is your duty to determine from the evidence whether he omitted doing it and was negligent in that particular, and if his so doing caused the collision.''

The court in the succeeding instruction, to which exceptions were preserved, but not made the basis of an assignment of error, instructed the jury that it was the duty of the driver, as he approached the intersection and turned into Brady Street, to observe the foregoing statutory requirements, and that, if he failed to do so, his failure would, as a matter of law, be prima-facie evidence of negligence. The court in this instruction told the jury that, while the law fixed a maximum rate of speed at which motor vehicles may be driven upon the public streets, it did not follow that a lesser rate of speed might not constitute negligence; that whether or not a given rate of speed was negligent depended upon the time, place, and conditions surrounding the acts of the driver.

The particular complaint of Instruction 7 is that it refers to an ordinance of the city of Davenport, which was not offered in evidence, and that the evidence did not justify the submission to the jury of the speed of the automobile or the issue as to whether

the driver had it under control. As stated, the only direct evidence as to the speed of the automobile was that of Harvey Wessel, who testified that it was moving at about six miles per hour. The exact distance traveled from the point near the curb on Garfield Street at which the automobile was stopped while the approaching street car crossed the intersection to the place of the accident, is not shown. Brady Street is 40 feet in width between the curbs, and Garfield 30. The automobile was stopped in 5 or 6 feet. Appellee was not thrown any distance, but was knocked down on her hands and knees; and when the car stopped, she was on the right side, and near the rear thereof.

It has been too frequently held by this court that issues having no support in the evidence should not be submitted to the jury to require the citation of authority. It is difficult to wholly separate the duty to maintain a proper lookout for pedestrians for the purpose of avoiding injury to them, from the necessary acts to keep control over the vehicle and the speed at which it is being driven. There is some necessary relation between them. The purpose of Instruction 7 was, of course, to apprise the jury of the statutory duty resting upon appellant at the time.

The court did not submit the issues of either the speed or control of the car to the jury as independent grounds of negligence. They were submitted in connection with the alleged failure of the driver to keep a proper lookout for pedestrians on the intersection, and as a proper statement of his statutory duty. Manifestly, a speed of six miles per hour would not, under ordinary circumstances, constitute negligence. That it might be so under some circumstances may, no doubt, be true. There was evidence in this case that appellant said he could not see because of the covering on the wind shield. It was a question for the jury to say whether a speed of six miles per hour was, under these circumstances, negligent.

The further complaint against the instruction is that the court did not define the term "under control." The requirement of the statute that drivers of motor vehicles shall have the  same under control does not refer alone to the matter of speed, although doubtless this would ordinarily be the matter complained of. We have said that a car is under control, within the meaning of the law, if it is moving at such a rate and the driver

has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. *Carruthers v. Campbell,* 195 Iowa 390.

No instruction was requested by appellant on this point, and we think it was not error for the court to fail to define the term. It is somewhat difficult of accurate and precise definition under all circumstances. The term as used in the instruction complained of must be generally understood in the practical sense, and, under the circumstances disclosed, could not well have been misunderstood by the jury.

III. It is claimed by appellants that appellee stated to the driver of the car, in the presence of another witness, and upon other occasions, that accidents would happen, and that she did not blame Wessel. It is contended by appellant  that the court should, in this state of the record, have instructed the jury as to the effect of impeaching testimony. The court gave the usual instruction as to the credibility of the witnesses, and this, we think, was sufficient. If appellant desired a further instruction on this point, it should have been requested. The testimony related only to alleged declarations of appellee which were inconsistent with the claim she asserted upon the trial. The instruction given was sufficient on this point.

IV. Other questions argued, including the exceptions preserved to the instructions as a whole and the complaint made in the motion for a new trial of Instruction 10, are without merit. The charge was particularly clear and explicit, and fully covered all of the issues involved. We have already disposed of the contention that the motion for new trial should have been sustained upon the ground that negligence on the part of the driver of the automobile was not shown, as well as the other grounds therein stated.

We find no reversible error in the record, and its judgment is affirmed.—*Affirmed.*

Evans, Morling, Kindig, and Wagner, JJ., concur.