WILLIAM F. O'HARA, Appellee, v. CLAY CHAPLIN et al., Appellants.

No. 40446.

December 9, 1930.

*James E. Remley* and *Smith & Swift*, for appellants .

*George C. Gorman*, for appellee.

Kindig, J.—On July 13, 1928, about 5:30 o'clock in the afternoon, the plaintiff-appellee was traveling from the north to the south side of First Avenue East in Cedar Rapids, and was struck  by an automobile at a point approximately 30 feet west of where said avenue intersects Tenth Street in that city. The automobile belonged to, and was owned by, the defendant-appellant Clay Chaplin, and the defendant-appellant Dora Northrup was driving the vehicle with the owner's knowledge and consent. A description of the streets and surrounding circumstances will aid in understanding the questions hereinafter discussed.

First Avenue East, upon which appellee was injured, extends in an easterly and westerly direction, while Tenth Street runs north and south, and intersects the other thoroughfare approximately at right angles. Both streets are paved. There are double street-car tracks on First Avenue East, and Tenth Street has a single street-car line. At the southwest corner of the street intersection before described is a filling station. North from the filling station, and across First Avenue East at the northwest corner of the intersection, there is a grocery store. Appellee's

home was on the south side of First Avenue East, the second door west from the filling station.

Just before the accident, appellee went from his home, and passed the oil station along the west side of the intersection to the grocery store, where he apparently purchased a bottle of milk and some eggs. When returning to his home with those food products, appellee walked along the sidewalk west from the grocery store on the north side of First Avenue East to a point approximately 30 or 35 feet west from the Tenth Street intersection. Then the appellee started across First Avenue East in a southerly direction. He first passed between two automobiles parked on the north side of First Avenue East, and then continued walking across the avenue to a point about the center of the north streetcar line, when the automobile struck him and knocked him to the pavement. After the accident, appellee's body was found near the center of First Avenue East. Through the impact aforesaid, the appellee received serious injuries, for which the jury allowed him substantial damages. Because of alleged errors occurring in the district court, a new trial is sought.

I. In the first place, appellants complain because the district court did not direct a verdict for them, on the theory that no actionable negligence on their part was shown.

It is disclosed by the record that there is conflicting evidence concerning what the driver of the car did. Riding with her at the time was another lady. According to the appellee's version of the facts, these ladies, at the time in question, were looking and waving at two men who were operating the oil station. Hence appellee contends that the accident occurred because the driver was looking toward the filling station, rather than keeping a proper outlook. Upon this subject, the appellee testified as follows:

"It looked to me [the appellee] the two girls [the appellant Dora Northrup and the lady riding with her] were looking toward the Shell filling station south [the oil station at the corner] with their hand out. I hurried as quickly as I could, to get out of the way. I was struck, and knew nothing after that. * * * Just as I [the appellee] went to go in the middle of the four tracks [the street railway tracks on First Avenue East], I looked up, and I saw this car in front of me. I saw the condition I was in, and I saw them [appellant Dora Northrup and her lady com-

panion] looking the other way, south towards the oil station, and I made a quick move to get out of the way [of the automobile]."

Following the accident, the witness Walker went to the scene thereof, and heard a conversation between the appellant Dora Northrup, the driver of the car, and her lady companion. Concerning what was there said, Walker testified:

"The young lady [appellant Dora Northrup] and another young lady [the companion in the car] with her came across the street to where Mr. O'Hara [the appellee] was carried to [after the accident]. I did not know either of the ladies. One of the girls was a little bit hysterical. They were talking. One of them said to the other one, 'I never saw him [appellee] until we hit him, did you?' and she [the other] said, 'No.' She [the driver] said she just couldn't help it."

Likewise, the witness Booze said, upon the witness stand:

"I heard one lady [the appellant Dora Northrup] say: 'Why, I didn't see that man until I hit him,'—hit him or struck him, I don't know which she said now. She just made that remark."

With that testimony before them, and the other facts and circumstances concerning the condition on the avenue, it is manifest that the jury could, if they were so persuaded, find that the appellants were guilty of negligence. No question is raised concerning the admissibility of that evidence as against the appellant Clay Chaplin, who owned the car. Under the record, it was 24 feet and 6 inches from the north curb of First Avenue East to the north car track. After allowance is made for the width of the cars parked on the north side of First Avenue East, it appears, under the record, that there was an additional space of 19 or 19½ feet on which automobiles could travel westward on First Avenue East, and still be to the right of the north street-car rail. An automobile driver going westward over this avenue at that time would have had a course at least 19 feet wide upon which to manipulate his machine, without going upon the territory between the street-car tracks where the appellee was injured. If it be assumed that the appellant Dora Northrup, while driving her automobile on this occasion, failed to keep a proper outlook, as contended by appellee, then the jury might well find that such

conduct on her part constituted negligence which, under the circumstances, was the proximate cause of the injury.

As before suggested, there was a conflict in the evidence. Appellants contend that another automobile traveled northward on Tenth Street to First Avenue East, when it turned onto said avenue behind appellants' car, and continued westward. When this other vehicle, thus approaching appellant's car, sought to pass the same, and was opposite thereto, appellee was between the two vehicles. Whereupon, in order to avoid the second vehicle dangerously close to the south of him, appellants claim that appellee jumped backwards into the left fender of appellants' automobile. Continuing their argument, appellants maintain that no negligence appears on their part, because appellee had passed the line of travel to a safe place beyond, but jumped back unexpectedly and without notice, from the safe position into one of danger. Corroboration of appellant's contention may be found in the testimony of their witnesses.

On the other hand, appellee denies that he jumped backward, or that there was any other car passing appellants' automobile at the time. Furthermore, appellee claims that he jumped forward, to avoid being hit by appellants' car, but nevertheless the left fender thereof caught him. One witness for the appellee, who saw the accident, by way of corroboration said that he did not see a second vehicle on the street. Manifestly, the results of the conflicts and disputes in the testimony were matters for the proper consideration of the jury, and not the court.

"These issues, then, were necessarily and properly submitted to the fact-finding body." *Olson v. Shafer*, 207 Iowa 1001.

To the same effect, see *Noyes v. Des Moines Club*, 178 Iowa 815; *Doyle v. Burns*, 123 Iowa 488. During the discussion in *Gradert v. Chicago & N. W. R. Co.*, 109 Iowa 547, on page 550, we approved the following declaration:

"So it is for the jury to determine as to the weight of the evidence, though there be one witness testifying on one side to certain facts, and many witnesses on the other side testifying to a contrary state of facts. It is not the province, in such a case, of the court to pass upon the credibility of the several witnesses, and to say which one told the truth, or that the story of one is more likely to be correct than that of another."

II. Complaint is, nevertheless, made because the district court did not sustain appellants' motion to withdraw from the jury the appellee's specifications of negligence numbered 1, 2, 5, 6, and 7. Those specifications, as stated in the record, are that the appellants were negligent in the following particulars:

"1. In failing to operate said car in a careful and prudent manner, and at a rate of speed that would not endanger the property of another or the life or limb of any person.

"2. In failing to have said automobile under control and reduce the speed to a reasonable and proper rate when approaching a person walking in the traveled portion of said avenue. * * *

"5. In failing to keep a proper outlook for persons using and occupying said street.

"6. In failing to see plaintiff [appellee] and avoid striking him by turning said car to the right after she [the driver of the car] saw, or by the exercise of reasonable care could have seen plaintiff [appellee], and thereby avoid striking him.

"7. In failing to sound the horn or give any signal or warning of her approach before driving said car against, upon, and into plaintiff [appellee]."

The foregoing discussion under Proposition I goes a long way to dispose of appellants' contention at this point. Moreover, the record indicates that the driver did not operate the automobile in a careful and prudent manner, if the appellee and his witnesses are to be believed. Their version of the affair is that, as previously suggested, the operator of the car was not keeping an outlook, but looking at the oil station and waving at the men in charge thereof. A quoted excerpt from *Walmer-Roberts v. Hennessey*, 191 Iowa 86, on page 101, will demonstrate the thought. There it is said:

"The appellant argues the broad proposition that a driver of an automobile who sees a pedestrian on the street cannot be guilty of negligence for failure to bring the automobile to a full stop, upon approaching the pedestrian, who is apparently oblivious of such approach. Such cannot be the law. Our statute provides that every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and pru-

dent manner. This is no more than declaratory of the common law, and simply means that the driver of an automobile shall use such care as a man of ordinary prudence and care would exercise, under the same circumstances. Occasions may undoubtedly arise where the failure to come to a full stop would be negligence of a flagrant kind. To deliberately run down a pedestrian, apparently oblivious of the approach of an automobile, would be little less than manslaughter.''

See, also, *Rolfs v. Mullins,* 179 Iowa 1223. So, too, the driver of the car herself indicates that she was continually increasing her speed from the east side of the intersection until she struck the appellee, and thereafter, according to the evidence, the automobile continued for a distance of 62 feet before being brought to a stop. Contrary to appellee's claim, Dora Northrup, the appellant who was driving the car, testified that she saw the former on the highway ahead of the automobile. Also, the driver declared that she observed the appellee during his walk across the street all the time the automobile was approaching. If, under the record, the jury believed that the appellee did not jump backwards to avoid the second car, but rather jumped forward, to escape appellants' vehicle, then they could conclude that, although the appellant Dora Northrup saw the pedestrian all the while, she did nothing to avoid hitting him.

It cannot be said, as a matter of law, that the driver had the automobile under control, or reduced the speed to a reasonable and proper rate when approaching appellee upon the highway. While discussing this question in *Altfilisch v. Wessel,* 208 Iowa 361, we said, on page 367:

''The further complaint against the instruction is that the court did not define the term 'under control.' The requirement of the statute that drivers of motor vehicles shall have the same under control does not refer alone to the matter of speed, although doubtless this would ordinarily be the matter complained of. We have said that a car is under control, within the meaning of the law, if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity.''

Not only was there evidence indicating that the driver did not have the automobile under control, but likewise, the record

would justify the jury in finding that it was incumbent upon the operator to sound a horn, or otherwise warn appellee of her approach. That no such horn was sounded or warning given is conceded. Without again reciting the record, it is enough to call the reader's attention to the fact that the appellant Dora Northrup asserts that she saw appellee while he was crossing the highway. Upon this subject, we stated in *Handlon v. Henshaw*, 206 Iowa 771, on page 773:

"It cannot be held, as a matter of law in every case, that an auto driver is absolved from giving a signal on approaching a pedestrian on a highway on the theory that the pedestrian saw the vehicle immediately prior to the collision. *Walmer-Roberts v. Hennessey*, 191 Iowa 86."

Under all the record, then, we cannot say that the court erred in submitting appellee's aforesaid specifications of negligence to the jury.

III. Regardless of the foregoing, appellants argue that there should have been a directed verdict in the district court because the appellee was guilty of contributory negligence. In that regard, their theory is that the appellee did not make such observations and keep such outlook as was essential, under the facts and circumstances.

This highway was much used, and vehicles frequently passed to and fro. For a settlement of this question, reference now must be made to appellee's testimony. Appellee says that, when leaving the sidewalk on the north side of First Avenue East, he followed a well-worn path on the parking to the curb and then passed between the two parked automobiles before described. Here, appellee testified, he made observations both westward and eastward, and saw appellants' automobile coming from the east over across Tenth Street at the alley in the other block. Such approaching car was approximately 200 feet east. Apparently believing that the on-coming vehicle was a safe distance away, the appellee started across the street. At this point in his testimony, the appellee stated:

"Q. As you walked out into, or attempted to walk across it [First Avenue East], state what, if anything, you did towards paying attention to where you were going. A. I looked up and down, to see I was all right. Q. All right, then you came out in

the street, and something happened? A. Yes, sir. I was in the middle of the track. Q. When you say you were in the middle of the track, what do you mean? A. I was looking east and west,—when I looked up, there was a car right in front of me. * * * I got to the * * * middle of the north line [between the rails of the north street-railway line] * * * I had not crossed the north line. I was in the middle of it.''

After arriving at that position in the middle of the north street-car line, the appellee was struck by appellants' automobile. When we give full force and effect to appellee's testimony, as we must, when considering the motion for a directed verdict, it is apparent that he made observations before starting across the avenue, and continued doing so when proceeding over the public way. According to the record, appellee undoubtedly was less vigilant because he had seen the automobile 200 feet to the east, and thought he would have time to cross the street before that vehicle overtook him. But appellants' car traveled more rapidly than appellee anticipated. Can it be said, then, as a matter of law, that appellee was guilty of contributory negligence? Generally, the question of contributory negligence is one for the jury to decide, rather than the court. *Lamb v. Wagner Mfg. Co.,* 155 Iowa 400; *Toney v. Interstate Power Co.,* 180 Iowa 1362; *Phelan v. Foutz,* 200 Iowa 267.

While discussing this subject-matter in *Murphy v. Iowa Elec. Co.,* 206 Iowa 567, we suggested, on page 572:

''If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise, even though it is known what was done by that individual in this regard [concerning care], yet, if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question.''

Within the purview of this record, we cannot say, as a matter of law, that the district court erred in not directing a verdict in appellants' favor on the theory that appellee was guilty of contributory negligence.

IV. A reversal is demanded by the appellants because the

district court refused to give Requested Instructions 6 and 7. As before stated, the trial court did not give these requested instructions in the exact language used by the appellants, but the substance of the requested instructions, so far as material, was embodied in the charge actually given to the jury. Consequently, appellants were in no way prejudiced, and there is no reason for reversal because the requested instructions were not given verbatim.

V. Careful consideration has been given to appellants' objections to the district court's Instructions 2 and 3, and it is found that the exceptions are not well taken. Negligence was properly defined. Also, contributory negligence was defined, and the application thereof explained. There is no objectionable inconsistency between the definitions of negligence and contributory negligence. Proper application of the principles involved in these definitions was made, so far as necessary, to the facts in the case, when all the instructions are considered together.

VI. Pursuing their attack upon the trial court's instructions, the appellants here complain because that tribunal told the jury, in effect, that appellee need only show that he "did not  directly contribute to the cause of the collision and consequent injuries by any negligence on his part." Exception is taken to the use of the word "directly." The thought is that negligence must be the proximate cause, before a plaintiff can recover from a defendant, but that, conversely, contributory negligence need not be a proximate cause.

Undoubtedly, appellants are correct in their statement that contributory negligence need not be the proximate cause. *Towberman v. Des Moines C. R. Co.*, 202 Iowa 1299; *Stilson v. Ellis*, 208 Iowa 1157. However, the district court, in the instruction of which complaint is made, did not tell the jury that contributory negligence must be the proximate cause. All the instructions must be read together, because it is impossible to express the entire thought in a single paragraph. If the instructions actually given in the case at bar are thus read together, it is apparent that the district court, in effect, told the jury that the appellee could not recover in the event that his negligence in any way contributed to the injury. Such instructions, however, did, and properly can, contain the thought that the contributory

negligence must be direct,—not, however, that it shall amount to the proximate cause of the injury. Excerpts from some of the cases will demonstrate the thought. We said, in *Rietveld v. Wabash R. Co.,* 129 Iowa 249, on page 253:

"Of course, the plaintiff's negligence must be such as contributes *proximately* to his injury [the italics are ours]. But, if it does so in whole or in part, in any manner or to any degree, there can be no recovery on his behalf."

Again, in *Bird v. Hart-Parr Co.,* 165 Iowa 542, on page 547, we declared:

"The true rule is that plaintiff's negligence, if there be any, will not defeat him unless it be such as contributes *proximately* to the injury [the italics are ours]; but it need not be the sole cause of his injury."

To the same effect, we suggested, in *Sturm v. Tri-City R. Co.,* 190 Iowa 387, on page 391:

"* * * and that law violation [the one claimed to be contributory negligence] does not constitute such negligence unless the breach of the law in some manner *directly* contributed to the injury suffered [the italics are ours]."

Finally, we concluded, in *Stilson v. Ellis* (208 Iowa 1157), supra, on page 1166:

"Vigorous argument is made by appellants on the proposition that the court erred in defining 'contributory negligence' for the jury. Mistake, they say, arises from the statement of the court to the effect that contributory negligence is such as proximately causes the injury. Had the court confined that charge to 'proximate' alone, as distinguished from a contributing cause, there would have been error. *Towberman v. Des Moines C. R. Co.,* 202 Iowa 1299. Such condemned definition, however, was not given by the trial court in the present controversy. Rather than so doing, the court below defined contributory negligence to be such negligence as contributes 'in any degree' directly or proximately to the injury of which complaint is made. Therefore, the trial court in effect said that appellee's contributory negligence, in order to defeat her recovery, need not be the proximate, but merely a contributing, cause thereof."

See *Carlson v. Naddy* (Minn.), 232 N. W. 3.

Therefore, when the court's instructions are read as a whole, it is found that the jury were told that the appellee could not recover if his contributory negligence directly contributed to the injury in any degree. That is correct.

VII. Furthermore, complaint is made because the district court admitted evidence concerning the diagonal path leading from the sidewalk on the north side of First Avenue East to the  north curb line thereof. This evidence was admissible on the question of appellee's contributory negligence. *Middleton v. City of Cedar Falls,* 173 Iowa 619 (local citation 624). No objection is made by the appellants because the introduction of that evidence cast upon them a greater burden concerning a lookout, care, etc. Were the record different, it might be said that the evidence concerning the path would cause the jury erroneously to demand greater vigilance of the automobile driver when passing the place. Here, however, the appellant Dora Northrup, who was the driver of the car, declares that she saw the appellee all the time he was crossing the street. Having thus made complete observation, under their own claim, the appellants cannot now well say that prejudice arose because evidence concerning the path was introduced. Because of that record, there is no reversible error at this point.

VIII. Many other statements are made in appellants' brief and argument concerning why there should be a reversal. In order not to continue this opinion until it reaches a point beyond all reasonable length, we refrain from separately discussing each of said propositions. It is enough to say that the district court submitted only those grounds of negligence named in the petition, and correctly instructed the jury in reference thereto. So far as material, the substance of appellants' requested instructions was embodied in those actually given to the fact-finding body. Confusion or inconsistency nowhere appears in the court's charge to the jury. Under all the circumstances, it is apparent that the appellants had a fair trial.

The verdict of $2,800 is not excessive. By occupation, appellee engaged in the upholstering and carpenter business. As a result of the impact with appellants' car, the appellee received

severe injury to his right arm, shoulder, and knee, the right forearm was fractured, the wrist broken, and the muscles, tendons, and ligaments "were hurt, twisted, and wrenched." According to the evidence, the blood and nerve supply was impaired. An attending physician opined that the injury to the right arm and shoulder is permanent. Appellee's ability to use his right arm and shoulder, according to the evidence, was impaired to the extent of two thirds of their normal use and strength. More than this, a doctor treated appellee in the hospital for three weeks, following the injury, and after he left that institution, this physician attended appellee in the latter's home for three or four months. Even at the time of the trial, appellee experienced "steady pain" in his right arm, extending from the wrist to the shoulder. His sleep was interfered with, he was very nervous, and suffered from dizzy spells. To some extent, at least, appellee's right eye was affected by the injury. Prior to the accident, appellee earned from $100 to $150 per month. During the first six months thereafter, he earned nothing. Following said six-months period, appellee earned only $10 or $15 per week. Added to appellee's loss through incapacity is his expense, as follows: For nursing,—general, $100, special, $84; for medical services, $250; for hospital care, $144.75. Manifestly, the verdict is not excessive.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, STEVENS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.