HAROLD A. JOHNSTON, Appellee, v. J. H. JOHNSON, Appellant.

No. 44168.

APRIL 5, 1938.

REHEARING DENIED JUNE 24, 1938.

D. M. Kelleher and Sullivan, McMahon & Linnan, for appellee.

Shumway & Kelly and McCoid, McCoid & McCoid, for appellant.

KINTZINGER, J.—Plaintiff and defendant were both employed by the Johnson Clay Works, located southeast of Fort Dodge, Iowa. On the afternoon of November 23, 1934, plaintiff

and defendant were engaged in loading bricks from an L-shaped brick pile in the brickyard. A description of the brick pile is aided by the following sketch:

This pile of brick extended in an east and west direction, was 30 feet long at the north, 5 or 6 feet wide at the west, and extended easterly at the same width for about 15 feet; from whence it extended southerly about 4 feet, from thence easterly 15 feet, and from thence northerly to the north line about 10 feet.

The defendant, accompanied by his wife, drove his truck to the southwest corner of the narrow part of the brick pile, with the truck standing in an easterly and westerly direction, the north side of the truck standing parallel with and about one foot out from the south wall of the narrow part of the brick pile; the rear end of the truck was stopped about 15 feet west of the L end of the brick pile. The cab of the truck had a window in the rear and was also equipped with a rear-vision mirror. The brakes and other mechanism of the truck were in good condition.

Plaintiff was the foreman, and he and defendant started loading bricks from the southwest corner of the narrow end of the pile. In loading the bricks, the plaintiff set the bricks on the back end of the truck and defendant picked them up from there and piled them in the front end. While so doing, defendant's wife was on the driver's seat in the cab.

Plaintiff's testimony tends to show that after having loaded about 500 large bricks, weighing about 2,500 pounds from the southwest corner of the pile, plaintiff directed the defendant to back his truck up a *couple of feet* for the purpose of loading

more quickly; that the defendant, pursuant to such request, told his wife, who was in the cab of the truck, to back it up a couple of feet. Plaintiff's testimony also tends to show that at that time the rear end of the truck was about 15 feet from the west end of the L part of the brick pile.

The testimony also tends to show that the defendant's wife, in compliance with the direction from defendant to back up a couple of feet, moved the truck backward about two or three feet and came almost to a stop. At the time the truck started to back, the evidence tends to show that plaintiff was standing three or four feet back of the truck, watching it. Plaintiff's evidence tends to show that at that time the plaintiff was about 12 feet from the L part of the brick pile. The evidence also tends to show that, instead of stopping the truck where directed, when it had almost come to a stop, it was suddenly and quickly backed up against the plaintiff at such a speed that he was unable to get away from the rear of the truck and was pushed back about 12 feet and crushed against the L part of the brick pile with such force that his body made a dent in that part of the brick pile extending easterly about 15 feet, pushing some of the brick off the east end of the pile.

The plaintiff in describing the movement of the truck, after he directed that it be backed up a couple of feet, said:

"Well, the truck backed up a couple of feet and came nearly to a stop, and all at once it started coming back fast. It shot back, and she came back so fast and I couldn't do anything but try to hold my balance because I was facing the back end of the truck. I threw my hands up. The edge pushed me into the pile of brick and I kept yelling and hollering for her to stop; and she even held me there—the truck was holding me against the brick. * * * I was pushed hard enough to push some of the bricks over in the pile 15 feet east and west."

The floor of the brickyard was level and had a hard, smooth surface. The evidence tends to show that a truck standing upon that floor of the brickyard could easily have been stopped within two or three feet from where it stood; it also tends to show that it was customary to move trucks backward a couple of feet when men were engaged in loading brick onto a truck.

There is a conflict in the evidence in relation to some parts of the record hereinabove set out. In view of the rule that

on a motion for a directed verdict the evidence must be viewed in its most favorable light for the plaintiff, we deem it unnecessary to set out in detail the defendant's evidence conflicting with that of the plaintiff.

As a result of being crushed against this pile of brick, plaintiff's left arm was broken; and he received other severe injuries to his body and legs.

At the close of the evidence and after the verdict, the defendant filed motions for a directed verdict and a new trial, chiefly upon the grounds that: (1) Plaintiff failed to show his own freedom from contributory negligence; and (2) that he failed to show any negligence on the part of defendant. The motions were overruled, and defendant appeals.

I.   Appellant contends that the court erred in refusing to direct a verdict in his favor and in refusing to grant a new trial, because the evidence showed that plaintiff was guilty of contributory negligence as a matter of law.

The defendant was accompanied on the truck by his wife to the southwest corner of the brick pile where the defendant left the driver's seat to help load the bricks into the truck. There was a hard, smooth, level floor in the brickyard where the truck was standing when plaintiff and defendant started to load the bricks from the corner of the pile. Defendant's wife was in the driver's seat when the truck drove up to the brick pile and stopped. She then took charge of the mechanism of the truck and knew that plaintiff was in the rear of the truck helping load. After 500 large bricks had been loaded into the truck from the corner of the pile, plaintiff directed the defendant, who was then standing in the truck, to back the car up a couple of feet. Plaintiff then heard the defendant tell his wife to back up the truck a couple of feet. The jury could well find from the evidence that she knew that plaintiff at that time was standing at the rear of the truck. Plaintiff testified that he was three or four feet back of the truck and that there was a clear space of 15 feet back of the truck, extending to the L end of the brick pile. The undisputed testimony shows that the driver, pursuant to the direction given her by defendant, backed up the truck two or three feet and *brought it almost to a stop,* when suddenly and without any warning the truck shot back between 12 and 15 feet, in such a rapid manner that plaintiff was unable to extricate himself from the rear end of the truck before he was

crushed against the L end of the brick pile. Was plaintiff guilty of contributory negligence under the circumstances?

The question of contributory negligence is generally for the jury. Laudner v. James, 221 Iowa 863, 266 N. W. 15; Zellmer v. Hines, 196 Iowa 428, 192 N. W. 281; O'Hara v. Chaplin, 211 Iowa 404, 233 N. W. 516; Zieman v. World Amusement Ser. Assn., 209 Iowa 1298, 228 N. W. 48; Wheeler v. Peterson, 213 Iowa 1239, 240 N. W. 683; Orr v. Hart, 219 Iowa 408, 258 N. W. 84; Huston v. Lindsay, 224 Iowa 281, 276 N. W. 201.

The evidence in this case on the part of the plaintiff tends to show that there was a clear space of about 15 feet between the rear end of the truck and the L end of the brick pile, and about 11 or 12 feet between where he was standing and the L end of the brick pile. The testimony also tends to show that it was customary for trucks under similar circumstances to back up and stop within two or three feet, and that they could be stopped within that distance on the hard, smooth, level surface of the brickyard floor.

It also shows in this very case that, after the driver backed up two or three feet, the truck in question did practically come to a stop; and it is fair to assume from the evidence that, if the driver had not then carelessly stepped on the gas instead of the brake, the truck would have stopped at the place where directed. Therefore, if the truck could, by the exercise of ordinary care, have been stopped within a distance of two or three feet, or even ten feet, plaintiff would have been in no danger whatever at the rear of the truck.

Under the evidence as shown by the record in this case, it was for the jury to say whether or not the plaintiff had a right to rely upon the presumption that the driver of the truck would exercise due care in backing it up as requested. From the evidence in this case the jury would have been warranted in finding that the driver knew of plaintiff's position at the rear of the truck, and she was therefore required to exercise due care for his safety. Huston v. Lindsay, 224 Iowa 281, 276 N. W. 201.

As the jury would be warranted in finding from the evidence that the truck could, by the exercise of reasonable care, have been stopped within three or four feet, and that in such event there would still have been 10 or 11 feet of clear space between the plaintiff and the L end of the brick pile, it cannot

be said as a matter of law that the plaintiff was in a dangerous position simply because he was behind the truck.

The fact that his position became dangerous thereafter by reason of the sudden backing of the truck, if plaintiff had no reason to anticipate such movement, would not in itself show that plaintiff was guilty of contributory negligence. Dillehay v. Minor, 188 Iowa 37, 175 N. W. 838, 11 A. L. R. 106; Verlin v. U. S. Gypsum Co., 154 Iowa 723, 135 N. W. 402; Nichols v. Town of Laurens, 96 Iowa 388, 65 N. W. 335; Norris v. Cudahy Packing Co., 124 Iowa 748, 100 N. W. 853; Middleton v. City of Cedar Falls, 173 Iowa 619, 153 N. W. 1040.

The evidence in this case was sufficient to warrant the jury in finding that the movement of the truck after it had almost come to a stop was so sudden and unusual that plaintiff, in the exercise of ordinary care, was not required to anticipate such unexpected movement. Prue v. Goodrich Oil Company, 49 R. I. 120, 140 A. 665; Markle v. C. R. I. & P. Ry. Co., 219 Iowa 301, 257 N. W. 771; Townsend v. Armstrong, 220 Iowa 396, 260 N. W. 17.

In Prue v. Goodrich Oil Company, 49 R. I. 120, 140 A. 665, 666, that court said:

"One is bound to anticipate and provide against what usually happens or is likely to happen, but one is not bound to provide against what is unusual and unlikely to happen or events which are only remote or slightly probable."

In Markle v. C. R. I. & P. Ry. Co., 219 Iowa 301, l. c. 308, 257 N. W. 771, 775, this court said:

"Under the doctrine of contributory negligence, it is not necessary for plaintiff to show that he exercised the highest degree of care, or that the care exercised by him was perfect. He was only required to exercise ordinary care."

We are constrained to hold that under the facts in this case the question of plaintiff's contributory negligence was clearly one for the jury, and the court was correct in so holding.

II. Appellant also contends that the court erred in failing to direct a verdict and grant a new trial because plaintiff failed to establish any negligence on the part of the defendant.

The following specifications of negligence were submitted to the jury under the court's instructions:

"(1) That after said motor vehicle had come to a stop or was practically stopped, the driver and operator * * * suddenly pressed the accelerator and thereby fed into the motor of said truck a great and unnecessary quantity of gas causing the truck to lurch back * * * against the plaintiff with such force and suddenness that the plaintiff was unable to escape from his position between the rear of said truck and said brick pile in time to avoid injury; all of which occurred at a time when the said defendant knew the plaintiff was in said position, where he would be, in the event of such movement of the truck, exposed to peril of life and limb.

"(2) The said defendant and said driver and operator were negligent in failing to have the same under control and to apply the brakes when the same was stopped or substantially stopped when it had been moved to the intended position, which was about two feet to the rear of the position in which said truck stood before said movement."

If the jury found that either one of such specifications was established by the evidence, they were warranted in finding a verdict against the defendant.

1. The evidence on the part of the plaintiff shows that after the direction was given to the defendant and the driver of the truck to back it up a couple of feet, the truck was backed up and came almost to a stop within two or three feet. The jury was warranted in finding from the evidence that the only thing necessary to complete the stop at that time was either to turn off the gas by throwing out the clutch, or by applying the brakes. If either one of these acts had been performed, the jury would have been warranted in finding from the evidence that the truck would have stopped within two or three feet, where it almost stopped. Instead of so doing the truck unexpectedly lurched backward in such a sudden and unexpected manner as to force plaintiff backward about 12 feet, crushing him between the pile of brick and the rear end of the truck. From the evidence offered, the jury could well have found that, instead of applying the brakes and throwing out the clutch, the driver of the car suddenly stepped on the gas with such violence as to force the truck backward in the manner indicated.

2. Plaintiff's evidence also tends to show that the driver of the car failed to control the brakes and other mechanism of

the car by suddenly forcing the car backwards in the manner shown by plaintiff's testimony. It cannot be said from this testimony, as disclosed by the record, and as hereinabove set out, that plaintiff failed to establish any negligence on the part of the defendant as a matter of law. Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736; Dircks v. Tonne, 183 Iowa 403, 167 N. W. 103; Napier v. Patterson, 198 Iowa 257, 196 N. W. 73; Luther v. Jones, 220 Iowa 95, 261 N. W. 817.

In the latter case this court said [220 Iowa 95, l. c. 103, 261 N. W. 817, 821]:

"If the jury believed plaintiff's version of the facts what other rational conclusion could fairly and reasonably be drawn therefrom than that the driver of the truck either failed to keep a proper lookout or failed to have his truck under proper control? At least, was it not a question under this state of facts and circumstances to be submitted to the jury for its determination?"

Likewise in the case at bar, it cannot be said as a matter of law, from the evidence introduced on behalf of the plaintiff, that no negligence on the part of the defendant was established. At least that question was for the jury.

Appellant also contends that the defendant is not liable for the negligent acts of his wife. The truck in this case was owned by the defendant, and under section 5026 of the Code the owner of a vehicle operated by another with the consent of the owner is liable for the driver's negligence. Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736; Dircks v. Tonne, 183 Iowa 403, 167 N. W. 103; Napier v. Patterson, 198 Iowa 257,.196 N. W. 73.

In Smith v. Spirek, 196 Iowa 1328, l. c. 1334, 195 N. W. 736, 739, this court said:

"Complaint is made of certain instructions given by the trial court. The eighth instruction has to do with the responsibility of defendant for the negligent acts of his driver. The evidence is without dispute that the defendant's youthful son was driving the car, with the consent of the defendant, and under his direction. The court instructed that:

" 'The defendant is held responsible for the negligent acts of his son, if any you find there were, while operating said automobile with the consent of defendant, and while defendant was riding therein.'

"Clearly, the negligent acts, if any, of the driver of said car under the circumstances of this case must be considered as the acts of the defendant, and the instruction merely states the rule of responsibility for negligence under the facts."

Likewise in this case the driver of the truck was defendant's wife. She was not only driving it with his consent, but at his direction, with him present in the truck directing her to back it up. We find no error in the instructions in this case with reference to the responsibility of defendant for the negligent acts of the driver, if any, in this case.

We are constrained to hold that, under the evidence in this case, it cannot be said as a matter of law that no negligence on the part of the defendant has been established. That is necessarily a question of fact for the jury.

III. Appellant contends that the court erred in failing to give any instruction to the jury defining the meaning of the words, "failing to have same under control", and left it to the jury to guess and speculate as to the meaning thereof; and for the further reason that nowhere in the instructions did the court define to the jury the meaning of "control", and that the court erroneously defined "control" as the failure on the part of the operator of the truck to apply the brakes so that the truck could be stopped in about two feet.

The second specification of negligence alleged was:

"The said defendant and said driver and operator were negligent in failing to have the same under control and to apply the brakes upon said motor vehicle at the time when the same was stopped or substantially stopped when it had been moved to the intended position, which was about two feet to the rear of the position in which said truck stood before said movement."

In part of instruction No. 8 the court said:

"Under the second specification of negligence the burden is on plaintiff to show that the driver should have applied the brakes so as to stop the truck at a point about two feet back of its position before it was moved."

This latter part of instruction No. 8, however, is simply an instruction advising the jury that the burden of proof was upon

the plaintiff to establish the second specification of negligence as alleged in the petition.

It is perhaps true that the court did not in terms specifically define the word "control" as used in the instruction. That term would naturally be understood by the jury in its practical and ordinary sense and could not well have been misunderstood by the jury. Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862. This rule is supported by the recent case of Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645.

No instruction was requested, however, by defendant upon this question. If defendant had desired a more specific instruction, it should have been requested. As no such request was made, appellant cannot complain about it now. Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862.

In Altfilisch v. Wessel, 208 Iowa 361, 1. c. 367, 225 N. W. 862, 865, in an opinion written by Justice Stevens, this court said:

"The further complaint against the instruction is that the court did not define the term 'under control.' The requirement of the statute that drivers of motor vehicles shall have the same under control does not refer alone to the matter of speed, although doubtless this would ordinarily be the matter complained of. We have said that a car is under control, within the meaning of the law, if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop within a reasonable degree of celerity. * * *

"No instruction was requested by appellant on this point, and we think it was not error for the court to fail to define the term. It is somewhat difficult of accurate and precise definition under all circumstances. The term as used in the instruction complained of must be generally understood in the practical sense, and, under the circumstances disclosed, could not well have been misunderstood by the jury."

Likewise the instruction in this case must have been generally understood by the jury in its practical sense, and we find no prejudicial error therein.

█ IV. Appellant also contends that the court erred in giving that part of instruction No. 4 relating to negligence and ordinary care, because it required too high a degree of care on

the part of the defendant and the driver of his truck. That part of the instruction complained of is as follows:

"Negligence means the want of ordinary care or the failure to use it. Ordinary care consists in doing everything which a person of ordinary prudence and caution would do under the circumstances. It also consists in avoiding the doing of everything which a person of ordinary prudence and caution would not do under the circumstances. * * *

"Ordinary care or reasonable care and caution is that care and caution which a reasonably prudent and cautious person would use under the same or like circumstances and in relation to the same or similar matters to preserve himself and others from injury."

Appellant contends that the omission of the word "ordinarily" from said instruction requires a higher degree of care than is the rule.

In approving the language of a similar instruction, this court in Little v. McGuire, 43 Iowa 447, 1. c. 448, 449, said:

"The court instructed the jury as follows:

" 'Ordinary care and prudence consists in doing everything which a man of such care and prudence would do, and in omitting to do everything which a person of like care and prudence would omit; but the law does not require at the hands of any such person the use of extraordinary or unusual care, or the exercise of unusual diligence.'

"This instruction is claimed to be erroneous. Whilst it may differ in phraseology from the definition of ordinary care contained in some cases, still we think it is correct. What a person of ordinary care and prudence would do in a given case, furnishes a fair and reasonable test of ordinary care. The omission of anything which an ordinarily prudent person would do, is a failure to do that which ordinary prudence suggests. Hence, a person cannot exercise ordinary care, without, in the language of the instruction, doing everything which a man of ordinary care would do."

Likewise it may be said in the instant case that while the instruction complained of is not in the identical phraseology with the definition of ordinary care in some cases, still we think it was not prejudicial.

We doubt whether this instruction expresses a materially different meaning than if it had stated that ordinary care consists of doing everything which a person of ordinary prudence and caution would *ordinarily* do under the circumstances.

No request for a more specific instruction defining "ordinary care or negligence" was made by the defendant, and, in the absence of such request, he cannot now complain. We do not believe that the omission of the word "ordinarily" in the instruction given worked any prejudice upon the defendant.

For the reasons hereinabove expressed, it is our conclusion that the action of the lower court in submitting this case to the jury was correct. The judgment is therefore hereby affirmed. —Affirmed.

STIGER, C. J., and ANDERSON, DONEGAN, MITCHELL, RICHARDS, HAMILTON, SAGER, and MILLER, JJ., concur.