OLE S. OLSON, Appellee, v. F. H. SHAFER, Appellant.

NOVEMBER 20, 1928.

REHEARING DENIED MARCH 8, 1929.

*Martin & Alexander,* for appellant.

*Burnstedt & Hemingway,* for appellee.

KINDIG, J.—On September 4, 1924, the plaintiff-appellee and his wife were driving a Nash automobile westward over a graveled public highway in Hamilton County, known as Primary

No. 5. They were on their way to Webster City, for the purpose of attending a fair. It was between 12 and 1 o'clock in the daytime. As they approached a private driveway, extending southward from the main highway and leading into the defendant's farm, about a mile and one half west of appellee's home, the accident occurred. The appellee was driving his motor car about 25 miles per hour, when suddenly the appellant propelled a Ford automobile northward out of the private way into the public thoroughfare, crowding the appellee to the north, so that the front left fender of his machine struck the right hind hub of the Ford. That caused appellee's car to sway still farther to the north, into a ditch along the graveled way, where, after running some distance, it finally tipped over, and produced the damages to the vehicle for which this suit is brought. From the north edge of the private passage to the graveled portion of the public road, it was approximately six feet. This intermediate space consisted of a ditch or depression, possibly caused by obtaining sufficient dirt to make the grade on which the gravel was placed.

Appellee and his wife testified that, immediately before approaching the scene of the collision, there is a hill, which slopes westward past appellant's private lane.; and the latter, they assert, is somewhat sunken, and lower than the ground on each side. Their claim is that the view was obstructed by that condition, as well as by brush and trees extending from appellant's house along the private passageway to the principal highway. So, they contend that appellant's vehicle could not be seen by them until it entered the main road. Said Primary Road No. 5 was an active avenue of traffic, whereon many motor cars went to and fro each day.

I. While testifying, appellee said:

"The highway slopes considerably toward the west. The road is otherwise straight. Just a natural slope of the road right in front of his [appellant's] house. I noticed Mr. Shafer [appellant] just as he entered the main road. He got about to the end of his lane. * * * I could not tell exactly how close I was when I first saw the Shafer car enter into the primary road, but I should judge about 30 feet. My speed was about 25 miles an hour. I was on the north side, going west. Mr. Shafer turned to the left, going west. * * * When I saw his car first, he was probably starting to turn slightly to the left. The road (the

graveled portion thereof) is of the ordinary width, about 30 feet. When I first saw him coming into the road, I threw out the clutch on the car, and applied the brake as quick as I could. I went straight ahead, until Mr. Shafer got against me. Then I had to turn to the right. I couldn't go straight ahead any further. Mr. Shafer's car was turned northwest, I should say. It was headed toward the north side of the road. * * * I was right against the ditch at that time. I went probably 30 feet west, after running into the ditch. At the time I touched the Shafer car, I was just at the very edge of the ditch, as near as I could tell. The front fender on the left side touched the Shafer car at the front end of his rear fender. If I had not turned to the right, there would have been a collision. At that time, the Shafer car was still going northwest. * * * There was brush back there, and trees on here. * * * He [appellant] said he never thought of looking east. He looked west, he said.''

Mrs. Olson stated, on the witness stand:

''I was with my husband, the day of the accident, sitting on the right front seat. The highway slopes, right in front of the Shafer house, going to the west. * * * I did not see the Shafer car until it was right up to our car, in front of it, or sideways. He [appellant] kept coming that way, and he struck with Mr. Olson [appellee], and we just turned over, and went into the ditch. He [appellant] came right out, it seems, of the driveway, kind of slanting northwest. He was not west. He was not exactly north, but he was sideways. I don't believe it was very many feet between the two cars when I first saw the Shafer car. They were close together. * * *''

She further said, on cross-examination:

''The top of the hill is just before we get to the Shafer place. Then we started downhill, going west. East of Shafer's place, we slowed down by going over the hill. We were not going fast. We started down the hill slow, going west. We didn't pick up very much speed. Twenty-five miles an hour was the extreme limit.''

Basis for the introduction of the foregoing testimony was founded upon appellee's petition, containing these allegations of negligence, in substance, that: First, appellant failed to look to

 the right, while driving out of his private lane, when entering upon the primary road; second, he failed to give the right of way to the appellee; third, he failed to use due care in controlling his own machine and observing those of others immediately before and at the time of the accident; and fourth, no stop was made, before entering upon the main road. Nevertheless, appellant insists that, under the pleadings and the record above set forth, he was entitled to a directed verdict at the close of the appellee's testimony. With this we cannot agree. Section 5035 of the 1924 Code, among other things, provides:

"* * * that * * * vehicles coming from * * * private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

*Kemmish v. McCoid,* 193 Iowa 958, aptly says:

"The situation of one about to enter a public highway from a private driveway is somewhat analogous to that of the driver of an automobile approaching a street intersection, or about to cross a street. He is bound to know that the highway is extensively used for travel, and that rapidly moving, high-powered motor vehicles are common thereon. * * * The duty to look implied the duty to see what was in plain sight, unless some reasonable explanation is shown. *Holderman v. Witmer,* 166 Iowa 406, 407. Mrs. Kemmish does not claim that her attention was distracted in any way, and the only explanation she offered of her failure to see was that the automobile was not there. The physical facts are such as to show conclusively that in this she was mistaken. * * * It was clearly the duty of Mrs. Kemmish, before entering the highway, to look to the north for approaching vehicles, and not to proceed into the highway if she saw one coming, unless, as a reasonably prudent and cautious person, she believed, and had a right to believe, that she could pass in front thereof in safety. * * * The driver of a motor vehicle may not go upon the highway in front of another motor vehicle traveling at a rapid rate of speed, and rely for safety upon the driver of the approaching car to pass to the left in time to prevent a collision, or to operate it with due care and without negligence. * * * It is the duty of such driver to exercise reasonable care, and, unless it is reasonably manifest to a person in the exercise thereof that

the highway may be entered with safety to the drivers of both cars, to wait until the one already upon the highway has passed."

Hence, in the case at bar, there was evidence that appellant did not look to the east, and did not so control his Ford automobile as to safely proceed in front of the appellee. Apparently appellant did not stop, as is required by the law, under the facts and circumstances revealed by appellee's evidence. Consequently, the trial court was justified in submitting the issues to the jury.

II.  In answer to appellee's petition, the appellant interposed: First, a general denial; and second, a plea of contributory negligence.

To support this defense, his evidence, in effect, is that the private lane was not obscured by weeds, trees, or other condi tions; that his Ford car was operated in a careful and prudent manner, slowly, and not to exceed 10 or 12 miles an hour; that, when he approached the primary road, caution was taken to observe travelers that might be advancing thereon, not only from the west, but also the east; that he noticed plaintiff's approaching Nash automobile a quarter of a mile away, and therefore believed there was sufficient time to enter the highway ahead of him; that this was attempted, and accomplished to the extent that appellant got upon the graveled part of the public way and proceeded westward thereon for a distance of 150 feet before appellee, coming from behind (the east), carelessly and negligently ran into appellant's Ford car.

Therefore, in harmony with this defense, appellant again moved for a directed verdict, at the close of all the testimony. As before, the district court refused to grant the same.

Contention is earnestly made that there is present in the record ample evidence to sustain the plea of contributory negligence. Foundation for this conclusion, however, is placed entirely upon the testimony of the appellant and his sustaining witnesses, without any regard for the evidence of appellee and his testifiers. Those conflicting statements and contentions were properly submitted to the jury, under these circumstances. *Murphy v. Iowa Elec. Co.*, 206 Iowa 567. We said in that case:

"If there is a conflict in the evidence as to what the person

accused of contributory negligence did or did not do, the question is then one for the jury."

Dispute arises in the present controversy concerning what appellee did prior to and at the time of the collision. Opposed to appellant's explanation that appellee ran him down are the declarations of the latter and his wife that appellant suddenly came from the hidden private driveway, drove immediately in front of them, and crowded them off the highway.

These issues, then, were necessarily and properly submitted to the fact-finding body.

III. Objection is made by appellant because the court improperly struck from the record a material portion of his own testimony relating to the manner and way in which he drove the  car down the lane. However, afterwards appellant did testify, without objection, to substantially the same thing, and the latter evidential matter stood, and permanently remained a part of the record. Such testimony is as follows:

"Q. How far was this car [the one seen upon the primary road] to the east, at the time you looked? A. About 40 rods, in my best judgment.

"Q. When did you look, with reference to your approach to the road there? A. Just as I entered the road.

"Q. After you looked to the east, what else did you do? A. I turned to the left, going west.

"Q. Why was it that you didn't stop, when you saw the car coming from the east? A. There was nothing that I could stop for; there was no car near enough but what I had plenty of time, in my best judgment, to get across the road there."

Embraced within the quoted statements is all the material subject-matter which was contained in that part of the record previously ordered stricken by the trial court. Resultantly, no prejudice arises. *Curnes, Eddy & Co. v. Maytum,* 187 Iowa 120; *Stilwell v. Stilwell,* 186 Iowa 177.

IV. Reversal is demanded because it is said the district court did not tell the jury that it was the duty of appellee to pass appellant's car on the left, rather than the right, in view of the fact that the approach was from behind.

When driving on this public highway at the time of the

catastrophe, appellee was not trying to go by or drive around the appellant. Manifestly, the impact was not caused by such maneuver. If we adopt appellee's version of the affair, he was immediately crowded to the north into the ditch, without any opportunity to avoid appellant on either side. Moreover, even though the idea of appellant is accepted, then the accident occurred because appellee negligently ran into the Ford automobile from the rear. Upon this theory the trial proceeded, and the court instructed the jury accordingly. A general charge was given by that tribunal to the jury concerning the duties and obligations of appellee upon the highway, as relating to the contributory negligence asserted by appellant. No further instruction in this regard was asked, and, under the circumstances, appellant has no reason for the exception. *Fisher v. Cedar Rapids & M. C. R. Co.*, 177 Iowa 406; *Wagner v. Kloster*, 188 Iowa 174; *Dunning v. Burt*, 180 Iowa 754; *Daugherty v. Advance-Rumely Thresher Co.*, 190 Iowa 424; *Shippley v. Gremmels*, 192 Iowa 801.

V. Another assignment of error is to the effect that the district court, throughout the instructions to the jury, caused prejudice to appellant because undue prominence was given certain portions of the evidence.

Careful examination has been made of the entire charge, and we fail to find any ground for the alleged grievance. At no place could the jury have been misled. *Whitman v. Chicago, G W. R. Co.*, 171 Iowa 277, cited by appellant, suggests:

"The attention of the jury should not be drawn to nonessen tial facts,—facts not determinative of the rights of the parties. The court should not emphasize or give undue prominence to evidentiary facts the existence or nonexistence of which must be settled by the jury."

See, also, *Conover v. Hasselman*, 199 Iowa 661.

This criticism, however, has no application to the instructions here involved. Emphasis was not given to appellee's theory more than to that of the appellant. Neither was undue importance placed upon any part of the facts, nor objectionable marshaling made thereof. Advantage, if any in that regard, was given to appellant, rather than appellee. Wherefore, this assignment of error is without merit.

**1008**

Full and complete consideration has been given to the entire record, and we find no basis for changing the result.

The judgment of the district court is, therefore, affirmed.— *Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.