LUCILLE McKEEHAN, Appellee, v. CITY OF DES MOINES, Appellant.

No. 41137.

1352

March 8, 1932.

Gillespie, Moody & Stewart, for appellee.

George P. Comfort, Chauncey A. Weaver, and C. R. S. Anderson, for appellant.

GRIMM, J.—This accident occurred on what is known as Illinois Street in the city of Des Moines. It appears that Illinois Street runs north and south, beginning at the north side of University Avenue and extending north for several blocks. It is fifty feet wide from lot line to lot line. The first street north of University Avenue is Indiana Avenue. The distance between these streets is 525 feet. North of Indiana Avenue is Forest Avenue. The distance between these two avenues is 555 feet. Generally speaking, the territory between University Avenue and Forest Avenue, through which Illinois Street passes, is a wilderness. Apparently, it is a low bog, filled in the main with willows, underbrush and tall grass, with here and there some large scraggly trees. It appears to be an uninhabited section. There are no sidewalks along Illinois Street. There is no place for pedestrians to walk, except upon the driveway. At times, in periods of high water, this territory becomes overflowed with water to a depth of from 5 to 11 feet. The record does not disclose definitely when, if ever, Illinois Street and the surround-

ing territory was platted, but apparently, if properly platted, it was several years ago.

On July 13, 1921, the city council of the city of Des Moines passed a resolution, parts of which are as follows:

"Whereas, it is represented to the city that Illinois Street, from the end of the grade on University Avenue north to Forest Avenue, is very low and swampy; and that the residents and property owners in the vicinity of said street desire permission to have the willow trees near at hand cut down and placed in the street, and to dump in materials so as to fill up the street and make it more nearly passable. * * * Be It Resolved by the City Council of the City of Des Moines; That permission is granted to the residents of the vicinity of Illinois Street, between University Avenue and Forest Avenue, to cut and place the willows in said street and to cover same with dirt, ashes and other clean filling (no filth being permitted) for the purpose of making the same more nearly passable for the convenience of the residents of said neighborhood. * * * Either the Engineering or the Streets Department may at any time stop such work or revoke this permission, and the City retains full control of said street for all purposes."

In July, 1928, by resolution, the city council approved a bill for hauling cinders on Illinois Street.

The accident in controversy took place the early afternoon of August 8, 1930. Prior to that time and apparently for many years, what is known as Illinois Street became a general dump. Apparently, in the beginning of the improvement of a portion thereof, the willows growing there were used to form a sort of a pontoon across the swamp, and on it refuse of various kinds was piled to make a sort of driveway. As this construction progressed, people began driving onto this roadway with loads of rubbish of all kinds and the rubbish was dumped on either side of the driveway. The height of this irregular grade above the ordinary level of the marsh varied from perhaps a foot to five or more feet. The edges of this driveway were irregular and jagged. It appears that, at various times, the refuse thrown on the edge of the roadway and alongside of the roadway was burned. By whom, it does not appear. The roadway proper, generally speaking, was, in the main, little, if anything, more

than a one-way drive, the width varying from time to time, depending somewhat upon the amount of rubbish piled on the roadway and on the ground adjacent thereto. The record does not disclose that, prior to the accident, any supervision was given by the city to the matter of dumping on this street or the care of the driveway. The record does not disclose the extent of the traffic on Illinois Street or upon Indiana or Forest Avenues, which cross Illinois Street. The record does not definitely disclose the extent of this swampy wilderness, but apparently, it covers an area equivalent to several city blocks, and is surrounded by a residential section, although there appear to be very few, if any, houses in this swampy section.

At about one-thirty o'clock in the afternoon of August 8, 1930, Lucille McKeehan, then eleven years of age, and her sister, Virginia, then nine years of age, were going north towards their home, traveling on Illinois Street, apparently between Indiana and Forest Avenues, when an automobile, driving north, overtook them; and when the driver sounded his horn, the girls, in order to permit the automobile to pass, stepped to the left and into some hot ashes, by which the plaintiff received serious burns to approximately the knees.

This suit is to recover damages against the city for the injuries thus received.

The petition was filed October 14, 1930, and the case was tried in January, 1931. A verdict was returned for the plaintiff and the defendant appeals.

I. The appellant presents twenty-one errors relied upon for reversal. It will only be necessary to consider a few of them.

■ . The defendant filed a motion for more specific statement to require the plaintiff to more definitely specify the point on Illinois Street where the plaintiff claimed the accident occurred. This motion was overruled by the court. It should have been sustained. The defendant was entitled to know, with more particularity than was specified in the petition, where the plaintiff claimed the accident happened. The defendant might have appealed from the ruling. Dorman v. Credit Reference Company, 213 Iowa 1016, and cases cited. By answering, the defendant waived the error committed. Dorman v. Credit Reference Company, supra.

II. ˙Appellant attacks Instruction No. 3, reading as follows:

"The particular acts of negligence complained of by the plaintiff and submitted to you herewith are as follows:

"1. That the defendant, City of Des Moines, failed to exercise reasonable and ordinary care in keeping said highway at or near the place where plaintiff was injured in a reasonably safe condition.

"2. In failing to keep said street level and in failing to fill in depressions and to tamp and make firm the soft places in said street.

"3. In failing to provide plaintiff with a reasonably safe roadway at the place where the accident happened.

"4. In failing to maintain a guard rail along said grade at the place where the plaintiff was injured.

"5. In permitting persons to dump rubbish on said street and to set fire thereto and permitting fires to continue burning."

Special exception is taken to paragraph 2 in the foregoing instruction, in which there appear such terms as "failure to keep the street level" and "failure to fill in depressions" and to "tamp and make firm the soft places in said street." There are exceptions also to paragraph 4, relating to the necessity of "guard rails" and the submission of all such issues to the consideration of the jury.

It is argued that the submission of allegations of negligence to a jury which are wholly without support in the evidence, is prejudicial error.

We have examined the record evidence with much care and fail to find where any witness refers to any street "depressions" or "soft places" or that the street is "unlevel." The witness Joe Wells, testifying for plaintiff, referred considerably to "brush" and "litter," but invariably qualified his statements by locating such debris "at the side of the street."

Many years ago, this court first announced the rule that it is error to submit to the jury, in an action for personal injuries, grounds of recovery concerning which there is no evidence tending to show that any one of them caused or con-

tributed to plaintiff's injuries. Allender v. C. R. I. & P. Ry. Co., 37 Iowa 264.

In Stein v. City of Council Bluffs, 72 Iowa 180, an action for personal injury, an instruction, correct as an abstract proposition of law, was held to be error, because it submitted to the jury as material a question on which there was no evidence.

In Griffith v. B. C. R. & N. Ry. Co., 72 Iowa 645, the trial court submitted to the jury the question whether a "block" was "so placed" between the rails as to be dangerous to the employees, and, if the jury so found, then the negligence charged in the petition should be regarded as established. Reversal was ordered because this court failed to find "any (evidence) which tends to show that the block was improperly placed, or which tends to show that it was so placed as to be dangerous to employees."

In Borough v. M. & St. L. Ry. Co., 191 Iowa 1216, an action to recover damages for personal injuries, five grounds of negligence were alleged and submitted. Two were found to be entirely without support in the evidence and the case was reversed.

In Dunnegan & Briggs v. C. R. I. & P. Ry. Co., 202 Iowa 787, the trial court submitted to the jury, among other issues, one relating to the character of the railway road bed. As there was no evidence to support the issue, we held the instruction to be error and affirmed the action of the trial court in granting a new trial.

See also Balik v. Flacker, 212 Iowa 1381.

In Graves v. C. R. I. & P. Ry. Co., 207 Iowa 30, l. c. 38, the trial court submitted to the jury the issue:

"That the planks laid on each side of the rail of the crossing were not of sufficient strength."

This court said that there was no evidence tending to establish said allegation and it should not have been submitted.

"The issue at this point was as to whether or not the crossing maintained was a reasonably safe and adequate crossing for farm purposes."

The roughness of Illinois Street, the lack of tamping, had nothing to do with the cause of plaintiff's injuries. No evidence

is offered to the contrary. Had the street been paved, hot ashes still might have lined the thoroughfare into which she could have jumped when frightened by the approach of the automobile and the outcome might have been quite the same.

It is not claimed that the defendant city had improved Illinois Street so that it was opened to traffic by the public over its entire width. On the contrary, the testimony is without contradiction that only a part of Illinois Street had been opened to traffic by reason of the construction of the irregular grading hereinbefore described. Undoubtedly, conditions might arise in a portion of a street open to the public in which hidden defects might be disclosed by tamping, or dangerous soft spots might be eliminated by the same process; but any instruction from which the jury might be led to believe it was the duty of the city, under the circumstances in the record in this case, to have tamped Illinois Street for the purpose of eliminating or avoiding the hot cinder bed into which the plaintiff stepped was manifestly misleading and erroneous. This is particularly true in light of Instruction No. 7, in which the court said:

"You are instructed that the power of the city extends over the whole of the street, including its entire length and width. A portion of the surface of the traveled way may be in perfect condition, yet, if, by reason of other conditions, either below the surface or bordering the main traveled portion on either side, those lawfully using such way are exposed to danger which the city does not make reasonable effort to remove or guard against, after it has knowledge of such condition, then it is negligent, and for such negligence, the city is liable to the traveler injured thereby."

When Instructions Nos. 3 and 7, hereinbefore quoted, are considered together, it is manifest they are misleading and prejudicial. This court said, in Stafford v. Oskaloosa, 57 Iowa 748, l. c. 751:

"If a street be opened for public travel for but a part of its width and the other part is not in a condition to be used by the public, the city would not be chargeable with negligence for failing to improve the whole of the street, or for accidents occurring to those attempting to use the part not improved."

In this connection, it must be borne in mind that the precise location of the ashes does not appear. Plaintiff's claim is that different kinds of rubbish had been burned at different times over a period of years along this street. Plaintiff's burns, however, are not related in the evidence to any particular burning or dumping of rubbish. Whether or not the rubbish had been dumped at the place of the injury and had been fired, or if so, when and by whom the rubbish was dumped there, whether it was fired and if so, when or by whom and the time and extent of the fire, are matters left entirely to inference and conjecture. Plaintiff herself testified:

" * * * a car came back of us and we got off on the side of the road to get out of the way of it and we got into that stuff and burned our feet and then we ran home. * * *

"Q. Can you tell how many steps you took, Lucille, about how many steps you took before you got into this? A. No. Q. Well, when you first stepped out to the left, you didn't step into anything hot, did you? A. I did not. Q. Well, you began to scream when you got into the fire, didn't you? A. Yes. * * * Q. How did you get back to the street, did you come straight back, or the way you went, or did you go right on a little farther? A. Went on a little farther. Q. Still out to the side of the street? A. Yes. * * * Q. About how many steps? A. About two or three. Q. But you went two or three steps from where you first landed? A. Yes."

The plaintiff's little sister testified, among other things:

"A. * * * she was away down there in all them weeds and she got out after I did. Q. Well, Virginia, you mean after you got in the ashes, Lucille went on outwards and you went forward, is that it? A. Uh-huh. * * * Lucille was down by the weeds in the ashes by the weeds. * * *"

From this testimony of the plaintiff and her little sister (and there were no other eyewitnesses), it clearly appears the jury might easily have found that the ashes into which the plaintiff claims to have stepped were not on the roadway at all, but off to the left several steps and down in the weeds.

In Morse v. Incorporated Town of Castana, 213 Iowa 1225, this court had under consideration a personal injury which oc-

curred off the traveled portion of the street. It was, in substance, the contention on the part of the plaintiff in that case that the rules determining the care devolving upon cities and towns in reference to the condition of its streets applied to the entire width of the street. This court said:

"Plaintiff states his position in these words: 'The duty of the town to keep its streets free from holes or excavations of a dangerous character extends to the entire street and not merely to the narrow traveled part thereof.' With this broad statement we cannot agree. If this were the rule it would have been the duty of this town to make this street passable for vehicles or traffic from fence line to fence line. While it is true that in some particular cases it has been said, in a loose way, that it is the duty of a municipality to maintain its streets free from obstructions or pitfalls to its full width, this statement is too general as construed by the appellant herein. We understand the rule to be that a municipal corporation has the right to divide its streets and set apart certain parts thereof for vehicular traffic, and when it does so, the part thus dedicated to that purpose is the part which falls within the provisions of the statute that it must use reasonable diligence to keep the same free from obstructions and pitfalls. * * * Many towns and cities have pavement with curbing in the center of the street which is the part designated to vehicular traffic, and the part thus dedicated is the part which for vehicular traffic, the municipality must, under the statute, keep in reasonable repair and free from obstructions or pitfalls. This is the conclusion which must be reached after a careful review of our cases as follows: Rusch v. City of Davenport, 6 Iowa (Clarke) 443; Stafford v. City of Oskaloosa, 57 Iowa, 748, and 64 Iowa 251; Byerly v. City of Anamosa, 79 Iowa 204; Fulliam v. City of Muscatine, 70 Iowa, 436; Lamb v. City of Cedar Rapids, 108 Iowa 629. While in some of our cases it has been said it is the duty of a city to maintain a clear street to the full limit of the street, it will be found on a study of those cases that the city or town had in fact opened said street for vehicular traffic to its full width."

Had Illinois Street been improved, built up and open for public traffic to the full width, then the rule questioned would be applicable; but under the undisputed evidence in this case

1360

and upon the whole record as made, we think it was error for the court to submit to the jury the question whether Illinois Street had been properly tamped and made firm, particularly when the instruction was not confined to that portion of Illinois Street which had been prepared and used for public travel.

Numerous other errors are relied upon and argued, but we deem the foregoing sufficient.

For the errors pointed out, the cause must be, and is,—Reversed.

WAGNER, C. J., and EVANS, DE GRAFF, ALBERT, MORLING, and KINDIG, JJ., concur.