LENA RUSSELL, Administratrix, Appellant, v. SIOUX CITY GAS & ELECTRIC COMPANY, Appellee.

No. 41329.

JUNE 24, 1932.

SUBSTITUTE OPINION DECEMBER 13, 1932.

REHEARING DENIED APRIL 6, 1933.

McCormick & McCormick, for appellant.

Jepson, Struble & Sifford, for appellee.

PER CURIAM: Alonzo T. Russell died in Sioux City, Iowa, on August 10, 1929, as the result of a contact with a high-tension wire of the defendant-appellee, the Sioux City Gas & Electric Company. The plaintiff-appellant, Lena Russell, was later duly appointed the administratrix of the Alonzo T. Russell estate. As such administra-

trix, she brings the present action to recover from the appellee damages for the alleged wrongful death of her intestate.

At the time of Russell's death, Dupont street, in Sioux City, was paved and extended north and south. Thirty-Fourth street was unpaved and is about 40 feet in width. This street extends east and west, and intersects Dupont street at right angles. Prior to the decedent's death, the city of Sioux City had been, and at the time thereof was, installing on Thirty-Fourth street a sewer system. Such system extended on Thirty-Fourth street west from Dupont street. A ditch had been dug west of Dupont street, on Thirty-Fourth, and some of the sewer pipes at the time in question were placed in the excavation. Apparently the ditch was 6 or 7 feet deep and 16 or 17 inches in width. It seems that the construction of the sewer system had progressed to the point where it became necessary to place a siphon under a creek. To do this, required the mixing of cement with which to fasten the joints.

On the day in question, the appellant's intestate was engaged in mixing the cement on the Dupont street paving. As he mixed the cement, he then carried it approximately 125 feet to the point of the siphon. At about 9:30 o'clock on the morning in question, Russell, for the purposes of his work, was walking along the edge of the sewer ditch in Thirty-Fourth street, when he came in contact with a live wire belonging to the appellee company. This wire was from a high-tension line carrying approximately 2,300 volts.

For some time before, and on, the day in question, the appellee maintained the high-tension line along Dupont street. Such line consisted of wires supported by, and elevated on, poles. Early Saturday morning on August 10, 1929, there was a storm in Sioux City, and as a result thereof the aforesaid high-tension wire of the appellee, extending along the westerly line of Dupont street across Thirty-Fourth street, broke near the northerly side of Thirty-Fourth street. That break occurred between 5 and 6 o'clock in the morning. This electric wire was lying on the ground across the ditch. Sparks would shoot from the wire, where the insulation was off near the end, when the wind was blowing. Apparently the end of the wire was north of the ditch in the grass.

When the men came to work that morning at about 8 o'clock, the high-tension wire was on the ground, as before explained. Russell, the appellant's intestate, at the time of the accident, was about 50 years of age. He had contracted for the construction of

that part of the sewer system to which reference has been made heretofore. Previously Russell had taken a subcontract from one Devlin, who had the principal contract for the entire work. The subcontractor, Russell, undertook to construct 216 feet of the ditch. Under the subcontract, Russell began his work on Tuesday afternoon, and the accident occurred on the Saturday morning following. Before going to work on Saturday morning, Russell traveled past the construction job to the home of George Edge. This was a little before 8 o'clock in the morning. Russell went to the Edge home for the purpose of using the telephone. Edge at the time was an employee of Russell. Both were working on the sewer construction job.

After Russell telephoned, he and Edge left the latter's home for the work. They had progressed a certain distance together on their course to the work when Edge returned to his house for the purpose of notifying the appellee company that the above-mentioned wire was down. Accordingly Edge called the appellee company on the telephone and reported the broken wire and the dangerous condition on the street. In response to Edge's telephone call, the appellee company promised to "take care of it". This call to the appellee company was made by Edge at about 8 o'clock in the morning. Following the telephone conversation with the appellee company, Edge went to the construction job and worked there with Russell until about half past 9 o'clock, when the latter was killed.

At the end of the plaintiff's testimony, the district court directed a verdict in the appellee's favor on the theory that Russell was guilty of contributory negligence. Therefore, the appellant appeals.

I. We think the evidence in the record before us is sufficient to take the case to the jury on the question of the appellee's negligence, and, in view of a new trial, we refrain from commenting thereon.

II. The principal contention of the appellant is that the district court erred in holding as a matter of law that the deceased was guilty of contributory negligence.

Generally, but not always, the presence or absence of contributory negligence is a question for the jury. Murphy v. Iowa Electric Company, 206 Iowa 567, 220 N. W. 360, and cases therein cited. If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise, even though it is known what was done

by that individual in this regard, yet if his conduct is such that there may fairly be different opinions with respect to it and one man honestly and reasonably says it was in accord with ordinary prudence while another, just as sincerely and with equal reason, contends it was not, then there is a jury question. Measured by that standard, could the district court in the case at bar say, as a matter of law, that Russell was guilty of contributory negligence? Manifestly not.

According to the appellant's evidence, Russell may not have intentionally touched the live wire. There was a comparatively small burn on a finger tip of his left hand. The wind may have blown the wire against Russell's hand without his anticipation that it would do so. No witness said whether Russell voluntarily placed his hand against the wire or whether the wind blew it against him. Moreover, the jury, under the record, could say, if it were so convinced, that Russell may have thought at the time in question that the appellee company had turned off the electricity. As before stated, Russell, the jury could find, had gone to the home of Edge, an employee, to telephone. When Russell and Edge left that home, the jury could find that Edge went back to telephone the appellee company about the live wire on the ground. Edge did thus telephone, the jury could find, and then returned to the work with Russell. An hour and a half passed thereafter before Russell walked along the ditch and came in contact with the live wire. Can it not be said, under those circumstances, that Russell thought the appellee company had turned off the electricity?

Furthermore, it appears that, after Russell and Edge came upon the work that morning, Reisdorph, a city inspector, notified the men on the job, including Russell and Edge, that there was a live wire on Dupont and Thirty-Fourth streets. Reisdorph pointed out the wire, which was then sizzling and sparking on the grass some distance from the ditch. Under the record, the jury could find that, after Reisdorph thus notified the men, and when they became occupied with their work, he took an inner tube from an automobile tire and therewith moved the end of the live wire, which and been sparking and sizzling, into the ditch. When thus moved into the ditch, the end of the wire, which had previously been sparking, the jury could find, was near the bottom of the excavation. So, when Russell, at the time in question, walked along the ditch, he would not find the sizzling, spurting end of the live wire at the

place where it had been pointed out to him by Reisdorph, the inspector. Hence, the jury could find that Russell would associate that fact with all that had occurred that morning on the work, including the fact that Edge turned back, on the journey from the latter's house to the work, for the purpose of telephoning. Russell, as a reasonably prudent man, the jury could find, might well think under the circumstances that the appellee company had turned off the electricity. At least under these facts it cannot be said, as a matter of law, that Russell was guilty of contributory negligence because he did not notice the end of the live wire sparking and sizzling at its new location deep down in the ditch. There is nothing to indicate, the jury could find, that Russell knew that the wire had been moved into the ditch from the place on the ground above where it had been pointed out to him by the inspector, Reisdorph. Knowlton v. Des Moines Edison Light Co., 117 Iowa 451, 90 N. W. 818; Eason v. Des Moines Electric Co., 188 Iowa 43, 175 N. W. 945; Loveless v. Town of Wilton, 193 Iowa 1323, 188 N. W. 874. By placing the end of the wire in the ditch, Reisdorph, the inspector, removed the said sizzling and sparking from the view of those on the ground above unless they might by chance look down into the ditch.

Under all the facts and circumstances shown in the record, we reach the conclusion that the question of contributory negligence in this case is one for the jury to determine. It follows, then, that the judgment of the district court must be, and hereby is, reversed.—Reversed.

All Justices concur, except UTTERBACK, J., who took no part.