E. A. WINTER, Appellee, v. ALMA DAVIS, Appellant.

No. 42037.

December 12, 1933.

Harvey J. Bryant, and Putnam, Putnam, Langdon & Fillmore, for appellant.

L. R. Boomhower, for appellee.

KINTZINGER, J.—Plaintiff lived in Mason City and worked at Clear Lake. He drove to Clear Lake in the morning and returned to Mason City in the evening. The defendant lived at Clear Lake and worked in Mason City and drove to Mason City in the morning and returned to Clear Lake in the evening. At the time the collision occurred, the plaintiff returned from Clear Lake and had already entered the outskirts of Mason City, and was inside of the corporate limits. Defendant was leaving Mason City for Clear Lake. The roadway runs east and west at the place of the collision. The plaintiff was traveling east and the defendant west. The weather was bad; it was misting and sleeting, and the sleet was freezing on the windshield of automobiles. The plaintiff had stopped four times in the ten miles between Clear Lake and Mason City to clean his windshield for visibility. The last time was after he had reached Mason City. In stopping, he drove over the right side of the pavement onto the south shoulder of the road, with the right side of his car against a two-foot snow bank on the south shoulder of the road. There was no snow on the north shoulder of the road.

After the plaintiff had entered Mason City, the sleet and ice on his windshield became so bad he could see nothing ahead. He then stopped on the right shoulder of the road to clean his windshield. He had a left wheel drive and it was necessary to clean the left side of the windshield. To do this, it was necessary to get out of the left front door of the car. After his car stopped, he opened the left door and was in the act of putting his foot on the running board to clean his windshield when the defendant's car "side swiped" his car, took off his left fender, knocked him to the pavement, causing him severe injuries. Plaintiff's car was struck behind the front wheel, bending the front fender and tearing off the running board and damaging the rear fender. It also knocked off the left door

which Mr. Winter was in the act of opening. After being struck, the plaintiff was lying on the south half of the pavement near the black line in the center.

The defendant testified that "my windshield was slightly coated over. I could see ahead of me all the time, and I knew where I was on the highway at all times. I knew where I was going with my car right up to the time my car struck Mr. Winter's car. I saw the light from his car right up to the time of striking the car. I could not see the car itself, but I could see the lights. I was looking where I was going at the time of the collision. My eye sight is good."

There was no evidence showing that the roadway itself was covered with snow and ice although the evidence did show that the road was somewhat slippery. There was no evidence that defendant's car skidded or slid into plaintiff's car.

The allegations of negligence submitted to the jury were (1) that defendant was driving on the wrong side of the highway, (2) that she was negligent in failing to maintain a proper lookout, and (3) in driving at a higher rate of speed than was reasonable, and at a rate of speed greater than would permit her to bring her automobile to a stop within the assured clear distance ahead, before striking plaintiff's car.

The defendant claims the ice and snow on the road was the sole cause of the accident; that plaintiff was guilty of contributory negligence in parking his car on the pavement, in failing to keep a proper lookout in opening the left door of his car and stepping therefrom into the path of defendant's car, and in failing to have his car equipped with proper lights. Defendant contends that plaintiff was guilty of negligence as a matter of law. She also complains of some of the court's instructions and of the court's action in failing to submit proper instructions upon all of the defenses raised in her answer.

I. Defendant contends that the court erred in failing to direct a verdict for defendant because plaintiff was guilty of contributory negligence in stopping his car on the pavement and stepping into the path of defendant's car without first looking to see that he could get out in safety and in failing to keep a proper lookout.

The evidence shows that the distance between Clear Lake and Mason City is ten miles; that on account of the mist and sleet on the windshield, plaintiff stopped four times to clean it. The last time he

stopped for this purpose he drove his car to his right, onto the shoulder of the road. Two-thirds of his car was off the pavement entirely, and the right side of his car was up against a snow bank two or three feet high. He could not see ahead on account of the sleet on his windshield. Under the "assured clear distance ahead" statute he was required to stop. It will not do to say that a person is guilty of contributory negligence, as a matter of law, in making a temporary stop on the extreme right side of the road to clean off his windshield. A holding to that effect would penalize the driver of an automobile for doing the very thing which not only the exercise of ordinary care, but also the statute, required him to do. Code, section 5029; Ryan v. Trenkle, 203 Iowa 443, 212 N. W. 888; Hanson v. Manning, 213 Iowa 625, 239 N. W. 793; Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736; Jeck v. McDougall Construction Co., 216 Iowa 516, 246 N. W. 595; Perkins v. Schmit Construction Co., 215 Iowa 350, 245 N. W. 343; Russell v. Sioux City Gas Co., 215 Iowa 1405, 245 N. W. 705; Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504.

"It is a well-settled rule in this state that a person rightfully driving on a highway has the right to assume that other persons using the same will obey the law." Jeck v. McDougall Construction Co., 216 Iowa 516, 246 N. W. 595.

In Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736, we said:

"It may not be said that the decedent was obligated to anticipate the reckless conduct of the driver of the defendant's car. It was the duty of the driver to operate his car with care and with the requisite attention to the safety of persons upon the highway."

Until the time he stopped, the plaintiff had not seen the defendant's car approaching. His vision was obscured by the mist and sleet on his windshield; he was not bound to anticipate that a person approaching from the opposite direction would drive over on the wrong side of the road. He was, however, by the "assured clear distance ahead" statute required to drive his car at such a speed that he could stop within the assured clear distance ahead. At the time he stopped he had practically no assured clear distance ahead, and, in order to proceed, he was compelled to clean off his windshield to obtain a vision ahead.

In Hanson v. Manning, 213 Iowa 625, 239 N. W. 793, we said:

"Plaintiff, or rather the owner of the car, had the right to stop, and the owner and his employees had the right to make repairs and to use the highway in reasonable manner, exercising reasonable care, for that purpose. * * * Plaintiff was not required, as matter of law, to keep a constant lookout for approaching vehicles. He was only required to exercise ordinary care. Whether he did so or not is a question of fact for the jury. * * * Plaintiff was not required to anticipate negligence on the part of the drivers of approaching vehicles."

It was held in that case that prejudicial error would result from instructing in effect that a person who has stopped his car at a proper place in the highway in order to repair it must anticipate and guard against the possibility that the operator of some passing car may be negligent by passing the stationary car on the wrong side.

In Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953, we said:

"*When visibility was lost, the car should have stopped.* It availed him nothing to carry automobile lights, if his windshield was obscured. The loss of visibility, and the venture of the driver to proceed without it, were clearly the proximate cause of this accident." (Italics ours.)

Under the conditions shown by the undisputed evidence in this case, it was clearly the plaintiff's duty to make a temporary stop to clean his windshield.

It is also claimed that the court erred in not directing a verdict because the plaintiff failed to maintain a proper lookout. That is exactly what the plaintiff was endeavoring to do when he stopped his car. His vision became obscured by the sleet on the windshield to such an extent that he stopped his car for the very purpose of better enabling him to maintain a proper lookout.

It is also claimed the plaintiff was guilty of contributory negligence in stepping into the path of defendant's car. There is evidence in the case tending to show that defendant's car was not traveling in a straight line but was weaving back and forth on the pavement. Plaintiff did not step into the path of defendant's car; on the contrary, he had not stepped off of his own car. After his car

stopped, he opened the left door and was just in the act of stepping onto the left running board of his car. Defendant's car struck this running board. The first time he saw defendant's car was when he was in the act of stepping onto the running board; at that time he saw defendant's car coming towards his car at an angle. The evidence tends to show that it was then too late to avoid being hit. The question of his contributory negligence was properly submitted to the jury.

II. Defendant contends that the court erred in refusing to instruct the jury on some of the issues raised in defendant's answer. One of these was that plaintiff failed to keep a proper lookout. The undisputed evidence shows that the plaintiff did everything possible to maintain a lookout. He had already stopped his car four times to clean his windshield for the very purpose of having a proper lookout. After entering Mason City, sleet and ice had again accumulated on his windshield to such an extent that it was impossible to see ahead. He then drove onto the right shoulder of the road as stated. After opening the door and while in the act of stepping onto the running board to clean the windshield, defendant's car came at him at an angle, struck the left side of his car behind the front wheels, tore off the left door, the left running board, damaged the rear fender, bent the front fender, and knocked him onto the pavement. The first view plaintiff had of defendant's car was while he was in the act of stepping on the running board. He could not see her car before opening the door. At that time it was too late to avoid the collision. He had a right to assume that persons approaching his car from the east would travel on the other side of the roadway. Two-thirds of his car was off the pavement entirely and over on the south right shoulder of the road. There was no evidence in this case warranting the submission of any instruction as to plaintiff's contributory negligence because of his failure to maintain a proper lookout.

Where there is no evidence to support issues raised by the pleadings, it is not necessary to instruct thereon. 38 Cyc. 1627; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Seddon v. Richardson, 200 Iowa 763, 205 N. W. 307; Millard v. Northwestern Mfg. Co., 200 Iowa 1063, 205 N. W. 979; McKeehan v. City of Des Moines, 213 Iowa 1351, loc. cit. 1355, 242 N. W. 42; Dunnegan & Briggs v. C., R. I. & P. R. Co., 202 Iowa 787, 211 N. W. 364; Stilson v. Ellis, 208 Iowa 1157,

225 N. W. 346; Kaufman v. Borg, 214 Iowa 293, 242 N. W. 104; Dickeson v. Lzicar, 208 Iowa 275, 225 N. W. 406; Gross v. Humke Sanitary Bakery, 209 Iowa 40, 227 N. W. 620.

III. Another complaint is made of the court's failure to instruct the jury upon the issue of plaintiff's contributory negligence in opening the left door of his car and stepping therefrom into the path of defendant's car. What has been said in division II hereof also applies here. It is a matter of common knowledge that the only practical method of cleaning the ice and sleet from a windshield is to do it from the outside. The driving wheel of plaintiff's car was on the left side. The right side of his car was over the shoulder of the road against a snow bank over two feet high. His car was almost off the pavement entirely, and far to the south of the center line. It was necessary to get out of the car to clean his windshield, and the only way he could get out of the car was through the left door, and he could not do that until after he opened the door. After opening the door and while in the act of stepping onto the running board, the defendant's car came over on to the south side of the road and side swiped his car. He did not step into the path of danger. He had not even stepped onto the roadway, *but was still on his car.* He did not see defendant's car until he was in the act of stepping on the running board. There was not sufficient evidence upon this issue to warrant the jury in finding that this act constituted negligence.

IV. Another complaint is made of the court's failure to instruct the jury in reference to the defense that the proximate cause of the collision was the snow and icy condition of the pavement. There is no evidence of any other snow or ice on the pavement aside from the sleet as it was falling. It had been sleeting, but other cars had no trouble passing plaintiff's car on the north side. The black line in the center was visible; and there was plenty of room on the north side and the shoulder on that side was clear. Defendant says "I saw the light of the Winter car on the highway a distance of two or three blocks. * * * I first observed it when I was six or seven or eight hundred feet east of the scene of the accident. I watched that light all the time as I drove toward the car. The light did not appear to move in either direction as I saw it on the highway. I could see ahead of me all the time, and I knew where I was on the highway at all times. I knew where I was going with my car up to the time my car struck Mr. Winter's car. I saw the

light of his car right up to the time of striking the car. I don't remember that I retarded the speed of my car. * * * I was not going more than 25 miles an hour. It was a sleety, misty, rainy night. The visibility was bad. To the best of my judgment I was on the right side of the highway when I struck this car. I was looking ahead and watching the lights as I approached the car." There is no testimony of there being any other snow and ice on this pavement. No one testified that the defendant's car or any other cars slid upon any snow or ice on that road, or that such was the cause of defendant's car getting on the wrong side of the road. As there was no evidence to support the issue on this defense, it was unnecessary for the court to instruct on this issue. On the contrary, it would have been error to so instruct in the absence of any evidence to support it.

"A party is not entitled to an instruction on a theory on which he has adduced no proof." 38 Cyc. 1627; see cases cited under Division II hereof.

In the case of McKeehan v. City of Des Moines, 213 Iowa 1351, 242 N. W. 42, we said:

"Many years ago, this court first announced the rule that 'It is error to submit to the jury, in an action for personal injuries, grounds of recovery concerning which there is no evidence tending to show that any one of them caused or contributed to plaintiff's injuries.' "

In the case of Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346, we said:

"However, appellants further assert that their act was not the proximate cause of the injury and damage, but rather the ice on the pavement produced the result of which complaint is made. * * * Regardless of this, if A. C. Ellis had kept the Buick car on the right side of the road there would have been no need for making a stop, and hence the slippery condition of the pavement has nothing at all to do with the incident."

V. It is also contended that the court erred in giving instruction No. 10 telling the jury "that if the plaintiff halted his car at the extreme right side of the roadway, with the intention of then and there making a temporary stop to remove ice from his wind-

shield, then such temporary stopping would not constitute negligence as a matter of law."

There was no error in giving this instruction as the same question is disposed of in Division I of this opinion.

The temporary stopping on the proper side of a highway for a necessary purpose is not negligence. 42 C. J. 613, section 13; Harvey v. Knowles Storage Co., 215 Iowa 35, 244 N. W. 660; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Berry on Automobiles (6th Ed.) 849; Sahms v. Marcus, 239 Mich. 682, 214 N. W. 969; Kastler v. Tures, 191 Wis. 120, 210 N. W. 415.

The instruction given advised the jury in effect that the temporary stopping for the purpose of cleaning his windshield did not constitute negligence "as a matter of law." As there was no evidence in this case from which the jury could find that the stopping of the car in and of itself on the right shoulder of the roadway in any manner contributed to the collision, there was no error in the court's instruction. He was not parking his car, he was simply stopping the car for a necessary temporary purpose. If he had continued driving his car under the conditions present, he would have been guilty of contributory negligence.

This instruction simply had the effect of advising the jury that the defendant was not guilty of violating any statute by stopping his car on the side of the road for the purpose of cleaning his windshield and we see no prejudicial error therein.

The jury was properly instructed on the question as to whether or not the plaintiff was guilty of contributory negligence, as a matter of fact.

No specific request was made by the defendant for a more detailed instruction on contributory negligence than that given by the court. In the absence of such request there was no error in failing to give one.

"A general charge was given by that tribunal to the jury concerning the duties and obligations of appellee upon the highway, as relating to the contributory negligence asserted by appellant. No further instruction in this regard was asked, and, under the circumstances, appellant has no reason for the exception." Fisher v. Cedar Rapids & M. C. R. Co., 177 Iowa 406, 157 N. W. 860; Wagner v. Kloster, 188 Iowa 174, 175 N. W. 840; Dunning v. Burt, 180 Iowa 754, 162 N. W. 23; Daugherty v. Advance-Rumely Thresher Co.,

190 Iowa 424, 180 N. W. 277; Shippley v. Gremmels, 192 Iowa 801, 185 N. W. 922; Olson v. Shafer, 207 Iowa 1001, loc. cit. 1007, 221 N. W. 949, 951; Holmes v. Kittel, 191 Iowa 315, 182 N. W. 184; Evans v. City of Council Bluffs, 187 Iowa 369, 174 N. W. 238.

VI. It is also contended that the court erred in giving instruction No. 9 and telling the jury that it was the duty of the defendant at the time and place in question "to travel on the right hand side of the highway, or the north side thereof, * * * if you find from the preponderance of the evidence * * * that the defendant has violated this duty, then such violation would constitute negligence on her part." It is claimed that this instruction had the effect of advising the jury that it was negligence per se for the defendant not to travel on the north side of the pavement. It is urged that under the rule announced in the case of Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, it is only prima facie evidence of negligence to drive on the wrong side of the road. An examination of the Kisling case will disclose that the rule there stated was limited to the violation of this rule of the road *in the country and outside of cities and towns.* In the Kisling case we practically held that the violation of a statute in all other respects is negligence per se. We there said:

"Although this doctrine is inconsistent with the pronouncement we are making in this case, the majority of the court is of the opinion that this line of decisions, under the aforesaid section of the statute, should not be disturbed in view of the fact that it has been the recognized doctrine of this state since the enactment of the aforesaid section in the Code of 1860. It is therefore the law that *where an accident occurs outside of cities and towns, the fact that the vehicle is on the wrong side of the road is only prima facie evidence of negligence.*" (Italics ours.)

The court in that case also said:

"Where the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when in the trial of a case,—the other elements being proven,—it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such

legal excuse, then it is accurate to say that negligence is established as a matter of law."

Under the rule announced in the Kisling case a violation of a statute or ordinance is negligence per se unless such negligence is excused in some manner by the defendant. The exception to this rule in reference to driving on the wrong side of the road applies only "where an accident occurs outside of cities and towns."

Code section 5019 provides:

"The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street."

Code section 5020 of the Code also provides that:

"Persons * * * in vehicles * * * meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right."

The record in this case tends to show that the appellant violated both of the foregoing sections at the time and place of the accident.

In view of the rule announced in the Kisling case in respect to all other statutory violations, we are unwilling to extend the exception therein stated to cases arising in cities and towns. For this reason the instruction given by the court was correct and the defendant could only be excused from such negligence by showing an excuse therefor. We find no evidence of any excuse in this case. Defendant admits seeing the light on plaintiff's car. She was still in Mason City and her vision was not yet obscured by an accumulation of sleet and ice on her windshield. She could see the plaintiff's car over two blocks away. The road was straight. There is no evidence of any sliding or skidding of her car on any snow and ice on the pavement, and she does not testify to any.

As there was no evidence offered excusing the defendant's act in driving on the wrong side of the road, we find no error in the instruction. Holub v. Fitzgerald, 214 Iowa 857, 243 N. W. 575; Dillon v. Diamond Products Co., 215 Iowa 440, 245 N. W. 725.

VII. Defendant also complains of the court's instruction No. 9 "that it was the duty of the defendant to travel on the right hand side of the highway, or north side thereof, to take notice of conditions before her by keeping a reasonably proper lookout and not to drive her automobile at a speed greater than would permit

her to bring it to a stop within the assured clear distance ahead, under the prevailing conditions." Complaint is made of this instruction because it failed to advise the jury of defendant's right to show a legal excuse for such alleged violation. As hereinabove stated, no evidence of such excuse was offered. The instruction was not erroneous. Ege v. Born, 212 Iowa 1138, 236 N. W. 75; Holderman v. Witmer, 166 Iowa 406, 147 N. W. 926; Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220; Altfilisch v. Wessel, 208 Iowa 363, 225 N. W. 862.

In Holderman v. Witmer, 166 Iowa 406, 147 N. W. 926, we said:

"The duty to look implied the duty to see what was in plain view, *unless some reasonable explanation is presented for a failure to see.*" (Italics ours.)

In Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736, we said:

"When the defendant saw, or with reasonable diligence could have seen, the decedent in time to so operate his car as to avoid the accident, it became his duty to so act."

In the present case the evidence shows that the defendant saw the plaintiff's car for a distance of six or seven hundred feet. It then became her duty, in the exercise of ordinary care, to drive her car in such manner as to avoid colliding with it. Instead of so doing, she drove right into the car standing on the south side of the highway. We find no error in this instruction.

VIII. Appellant also complains of instruction No. 9 that "it was the duty of the defendant at the time and place in question * * * not to drive her automobile at a speed greater than would permit her to bring it to a stop within the assured clear distance ahead under the prevailing conditions."

In instruction No. 9½ the court said: "The assured clear distance ahead * * * means such a distance within which the operator of an automobile may, in the exercise of reasonable care and caution, bring the same to a stop within reasonable celerity, having due regard for all the surrounding conditions and circumstances."

Section 5029 of the Code provides:

"Any person driving a motor vehicle on a highway shall drive

the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

It is urged that instruction No. 9 is erroneous because it fails to permit defendant to show a legal excuse for any such violation. As stated in foregoing divisions hereof, it is unnecessary to instruct in reference to any defenses of which there is no evidence in the record. In the case of Kisling v. Thierman, 214 Iowa 911, loc. cit. 916, 243 N. W. 552, this court considered the term "legal excuse" which might be offered in justification of negligence alleged, assuming that a legal excuse might be offered in justification for the violation of a statute. No excuse, however, can be considered unless some evidence thereof has been offered in the record. We find no evidence tending to show any such excuse. In view of the facts already stated and the consideration already given thereto, a further discussion of this question is unnecessary here. This is not a case in which the lights of appellee's car suddenly came into appellant's view. She saw appellee's car on the roadway for a distance of six or seven hundred feet. Surely she could have brought her car to a stop and avoided a collision within that distance. "The court when instructing the jury that violation of the law of the road was negligence, *need not have told the jury of the defendant's right to excuse negligence, where no excuse was in evidence.*" (Italics ours.) Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393. For the reasons given we see no error in this instruction.

IX. It is suggested that the court failed to instruct the jury on the issue of plaintiff's contributory negligence in not having his car equipped with lights as required by statute. Defendant was the only witness who testified that plaintiff's car had only one light although on cross-examination she admitted she saw the *lights* of the plaintiff's car. All of the other witnesses testified that plaintiff's car had two headlights at the front. Assuming that the defendant's testimony was sufficient to raise a conflict in the evidence upon this question, there was no error because the court instructed the jury that, *if they found that the plaintiff failed to have two white lights on the front of his car, that he would be guilty of con-*

438

*tributory negligence* and could not recover. As no exception was taken thereto, we cannot consider it.

X. Error is also assigned because of the court's instruction No. 13 on the measure of damages. In this instruction the court said: "If, under the evidence and these instructions, you find for the plaintiff, *you will determine from the evidence the amount thus due him* and allow plaintiff such sum as will reasonably and fairly compensate him for the injuries sustained. You should allow him for necessary hospital bills as claimed by plaintiff, not more than $300.60; for doctor bills to the present time, not to exceed $290.00, and for the same as estimated to April, 1933, not to exceed $40.00; for supplies since leaving hospital, not to exceed $53.00; for loss of time, not to exceed $2,870; for automobile damages the sum of $71.60; and for pain and suffering up to the present time, not more than $2,000."

We fail to see that the jury was misled by this instruction or that they could have misunderstood it. The jury was told that, *if they found for the plaintiff, they will determine from the evidence the amount due him and allow him a sum as will reasonably and fairly compensate him for the injuries.* The balance of the instruction simply limited the amount of the recovery for these various items to the amounts claimed in the petition. We find no error therein. Carlson v. Jacob E. Decker & Sons, 216 Iowa 581, 247 N. W. 296; Albert v. Maher Bros. Transfer Co., 215 Iowa 197, loc. cit. 211, 243 N. W. 561, 568; Grace v. M. & St. L. R. Co., 153 Iowa 418, loc. cit. 433, 133 N. W. 672.

XI. It is also claimed that the verdict was excessive. Plaintiff sued for $7,500 damages. As a result of the accident he had a compound comminuted fracture of the left tibia and fibula, about the center of the shaft of the bone. He had a severe sprain of the left ankle and a severe contusion of the right leg, and the right ankle was badly sprained. At the time of the trial his injuries had not completely healed. Before the time of the collision the plaintiff was in good health and in the employ of the Chicago, Milwaukee & St. Paul Railroad Company earning $2,500 a year. His actual expenses were $755.20; his loss of time for a period of fourteen months from February 1, 1932, to April 1, 1933, which was $2,870, making a total of actual damages in the sum of $3,625.20. In addition thereto he claimed $2,000 for pain and suffering. With reference to pain and suffering, the plaintiff testi-

fied that he "was taken to the hospital and put in a machine they have to set this particular fracture. It has about a twenty pound pull that keeps your leg stretched tight all the time, and it holds your leg two or three feet from the bed. There is no possible way for you to move off your back. You have simply got to lay there and take it, that is all, and it just seemed as though I couldn't possibly stand it another day. I was in intense pain all the time I laid in that machine. That was eight weeks and three days. After that time he put my leg in a plaster cast, and took me home in an ambulance. I laid four weeks in bed with that cast on my leg, and I lay in bed for about three weeks more before I got up. I cannot stand up now for more than 30 minutes. My left leg is still lame and sore." The jury returned a verdict of $5,171.40. The question of damages therefore in this case was peculiarly one for the jury. We are not disposed to hold, as a matter of law, that the amount awarded by the jury was excessive. As supporting this view, see Borg v. Des Moines City R. Co., 194 Iowa 569, 189 N. W. 786; Downing v. Merchants Nat. Bank, 192 Iowa 1250, 184 N. W. 722, 20 A. L. R. 1138; Peak v. Rhyno, 200 Iowa 864, 205 N. W. 515.

We have carefully considered the record as a whole and find no error in the judgment of the lower court. The same is hereby affirmed.

ALBERT, C. J., and STEVENS, KINDIG, CLAUSSEN, ANDERSON, and MITCHELL, JJ., concur.